John C. GRECO

v.

**ORANGE MEMORIAL HOSPITAL CORPORATION et al.**

**D. B. Campbell et al., Additional Defendants.**

**No. B-73-CA-159.**

United States District Court,
E. D. Texas,
Beaumont Division.

March 29, 1974.

James R. (Ron) Weddington, Weddington & Weddington, Austin, Tex., for plaintiff.

John D. Rienstra, Rienstra, Rienstra & Dowell, Beaumont, Tex., L. W. Anderson, Dallas, Tex., Thomas B. Weatherly, Houston, Tex., Richard N. Evans, Beaumont, Tex., Don Burgess (For County Commissioners) Orange, Tex., Bill Sexton, Orange, Tex., Cleve Bachman, Orgain, Bell & Tucker, Lipscomb Norvell, Jr., Benckenstein & Norvell, Beaumont, Tex., Frank Hustmyre, Orange, Tex., for defendants.

## MEMORANDUM OPINION

STEGER, District Judge.

The plaintiff, Dr. John C. Greco, a licensed physician, brought this action against Orange Memorial Hospital Corporation (hereinafter called "the hospital" or "the corporation"), the members of the board of directors of the hospital, certain doctors on the staff of the hospital, the administrator of the hospital, and the County Commissioners of Orange County. The members of the board, the doctors and the administrator were sued in their individual as well as their representative capacities. The plaintiff has been a member of the medical staff of the hospital since 1960.

Generally, Dr. Greco seeks a declaratory judgment by the Court that the policy of the hospital prohibiting the performance of elective abortions is unconstitutional, and he additionally seeks injunctional relief and monetary damages in the amount of $225,000.00 actual and $100,000.00 punitive. Jurisdiction is invoked principally under 42 U.S.C., Section 1983, and additionally under the "First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution; Title 28, U.S.C., Sections 1331 and 1343, Sections 2201 and 2202."

Motions to dismiss were filed, one by the County Commissioners and a second on behalf of remaining defendants. The County Commissioners contended in their motion that the plaintiff's complaint failed to show that they were acting under color of State law and further that they were not a "person" under 28 U.S.C. 1343 and 42 U.S.C. 1983. The other defendants interposed several defenses to the complaint. They contended that the Court lacked jurisdiction because Dr. Greco did not have the requisite standing to sue, and because the defendants were not acting under "color of

state law" under 42 U.S.C. 1983. They further claimed that there is no constitutional right to an abortion on demand, that the state and county have remained completely neutral on hospital policy and that the plaintiff agreed to abide by the rules and bylaws of the hospital when he joined the medical staff.

Thereafter, on August 9, 1973, the plaintiff filed his motion for partial summary judgment requesting that the defendants be enjoined from enforcing their rule against the performance of elective abortions. Because of the complexity of the issues involved, the Court held an oral hearing on August 20, 1973, concerning the various motions. At the conclusion of the hearing the Court denied the plaintiff's motion for partial summary judgment and deferred ruling on the defendants' motions to dismiss until the time of trial.

Because an issue arose concerning the plaintiff's suit against the County Commissioners, he amended his complaint to clarify the fact that the County itself was not a party defendant.[1] Subsequently the County Commissioners filed a cross claim against the Orange Memorial Hospital Corporation contending that under the terms of the lease the corporation agreed "to relieve and hold harmless Lessor (County) from any and all liability whatsoever by virtue of the operation of the said hospital." Prior to trial the Court entered an order severing the damage issue and holding it in abeyance pending the outcome of the main case. Additionally the defendant doctors who voted adversely to the plaintiff on the abortion issue were dismissed from the case.[2] The case was tried to the Court in this posture on December 17, 1973. At the conclusion of the evidence the Court found that it lacked subject matter jurisdiction because the requisite state action was not present, so it dismissed the plaintiff's complaint. The following will constitute the Court's findings of fact and conclusions of law.

## BACKGROUND TO PRESENT LITIGATION

The hospital in question was constructed through the combined efforts of state, federal and private persons, with the goal in mind of providing quality health care for the people of Orange County, Texas. The sixteen acres of land on which the hospital sits were donated in 1954, 1964 and 1968 to the County by private donors. The original

---

1. After the landmark decision by the Supreme Court in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), it was the rule in this Circuit that a city or county was not a "person" within the meaning of 42 U.S.C. § 1983, whenever damages were being sought on the basis of respondeat superior but that a municipality could be a "person" if equitable relief was requested. See Harkless v. Sweeny Independent School District, 427 F.2d 319 (5th Cir. 1970). However, this rule has now been changed by the Supreme Court's clarification of its earlier decision in Monroe. In City of Kenosha v. Bruno, 412 U.S. 507, 513, 93 S. Ct. 2222, 2226, 37 L.Ed.2d 109 (1973), the Court said:

"We find nothing in the legislative history discussed in Monroe, or in the language actually used by Congress, to suggest that the generic word 'person' in § 1983 was intended to have a bifurcated application to municipal corporations depending on the nature of the relief sought against them. Since, as the Court held in Monroe, 'Congress did not undertake to bring

municipal corporations within the ambit of' § 1983, id., 365 U.S. at 187, 81 S.Ct. 473, they are outside of its ambit for purposes of equitable relief as well as for damages."

Thus, it appears that the *Harkless* distinction between legal and equitable relief under § 1983 is no longer viable. See Campbell v. Masur, 486 F.2d 554 (5th Cir. 1973).

2. These doctors were James P. Cloud, D. H. Pollock, George L. Eastman, Jr., Charles Crim, Howard C. Williams, Wilbur R. Cleaves, Robert C. Kee, John E. Barnes, Oscar R. Griffin, David Bennett, R. A. Ingram, C. B. Shaddock, Homer C. Stuntz, R. J. Fisette and M. F. Harris. The reason for their dismissal is that the policy of the hospital is set by the board of directors and not the medical staff. The medical staff makes recommendations that the board can either accept or reject. Dr. James B. Jones was retained in the suit because he is a member of the board of directors as well as a member of the medical staff.

hospital construction was paid for through the issuance of interest bearing county bonds and through the use of federal Hill-Burton funds.[3] The initial operating expenses were raised through public donations from persons in the local area.

In January of 1957, the Orange Memorial Hospital Corporation was chartered as a non-profit corporation and the following month the County entered into a lease agreement on the hospital with the corporation. The agreement provided that the hospital building and land would be leased to the corporation for renewable periods of five years for the sum of $1.00 per year. The corporation agreed to operate the hospital at its own expense, maintain the facilities without cost to the County, pay all taxes and insurance and assume any liability arising from litigation involving the hospital. Additionally, the corporation agreed to accept persons certified by the County as indigents on a reimbursable basis. Over the years the County has continued to provide monetary support through the issuance of time warrants for construction of new additions to the hospital.[4] Because the hospital enjoys the status of a non-profit corporation, it is exempt from federal, state and local taxes.

The board of directors was set up as the policy making body of the corporation. There are no County officials sitting on the board of directors, nor is the board required to consult the County under the lease on any policy matters except major alterations or additions to the physical plant. The corportion operates as a separate and independent entity apart from the County.

The Court will now turn to an examination of the events which precipitated this litigation. On January 22, 1973, the Supreme Court handed down its decision in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and the companion case, Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). Shortly thereafter, Dr. Greco began performing abortions at the hospital. On February 13, 1973, the hospital staff, Dr. Greco included, met and discussed the Supreme Court rulings and their relationship to future hospital policy. The surgery committee was directed to formulate general procedural guidelines for abortions and thereafter a meeting was held on February 20, in which this was accomplished. However, at the March staff meeting, a vote of the staff was taken and it was decided to recommend prohibition of abortions except for therapeutic reasons. Subsequently, the board of directors of the corporation voted unanimously for the medical staffs' resolution, and thus it became the official policy of the hospital. After the adoption of this policy, Dr. Greco sent six of his patients desirous of an abortion to the hospital for admission. All six were denied admission because of the policy in question.

Dr. Greco has continued to perform abortions at his clinic in Orange since the decision of the hospital's board of directors. At the time of trial, he and his partner had performed in excess of ninety abortions at the clinic. The plaintiff testified at his deposition that this litigation has given him a certain amount of notoriety through national publicity and has increased the number of his patients seeking abortions.[5]

---

3. Hill-Burton funds amounted to $1,250,000.-00 and the County voters approved $1,762,000.00 in hospital bonds.

4. $126,600.00 in time warrants were issued in 1966, and $551,958.00 in 1968.

5. At his deposition, the plaintiff testified as follows:
"Q. Have you had other patients come to you, that desired abortions, other than these six?
A. Yes, sir.

Q. How many others have you had?
A. About uh—well over a hundred.
Q. Is there some reason they come to you rather than some other doctor?
A. Yes, sir.
Q. What?
A. I made national television when I brought this suit on.
Q. Well, is that the only reason—it's not because of your medical ability?
A. Many doctors qualify to do the operation, sir.

However, the Court is of the opinion that some of the plaintiff's patients cannot undergo abortions at his clinic. These are the high risk patients—those with severe psychological problems or immaturity, those that are extremely obese, or have some serious disease. These patients are best handled in a hospital.

The Court takes note of the fact that the plaintiff as a member of the medical staff of the hospital, agreed to abide by all of the rules and regulations of the Orange Memorial Hospital Corporation. One such rule is of course the policy of the hospital permitting abortions only for therapeutic reasons.

## STANDING

■ The defendants contend that Dr. Greco lacks standing to litigate the issues in this case because he has not shown, "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

It is elementary that federal courts will not issue advisory opinions or answer hypothetical questions. This is required by the "case" or "controversy" limitation in Article III of the Constitution. The words "case" or "controversy" have a special meaning in the operation of the federal judicial system:

"In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine." Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968).

The requirement of standing has also been employed as a judicial rule of self restraint. See United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936).

The plaintiff in this case is asserting the rights of his female patients as well as his own right to freely practice medicine in accordance with the highest standards of medical practice. It is clear that pregnant women desirous of an abortion would have standing to bring this suit. E. g. Roe v. Wade, supra; Doe v. Bolton, supra. Additionally the pregnant woman's physician should not be unduly interfered with in the abortion decision. As stated by the Supreme Court in Roe v. Wade:

"This means, on the other hand, that, for the period of pregnancy prior to this 'compelling' point [the end of the first trimester], the attending physician, in consultation with his patient, is free to determine, without regulation by the State, that in his medical judgment the patient's pregnancy should be terminated. If that decision is reached, the judgment may be effectuated by an abortion free of interference by the State." 410 U.S. at 163, 93 S.Ct. at 732.

The Supreme Court in Doe v. Bolton, struck down certain statutory requirements that the Court felt unduly infringed on the physician's right to practice medicine.

Q. You think it is from the publicity you received from this suit? Is that what you are saying?
A. Part of it. But Planned Parenthood in Houston was sending me patients, too. People in this area would call Planned Parenthood and they would recommend that the patient come see me."
Deposition of John C. Greco, at pages 37–38.

Further, there have been situations in the past where because of some integral and interwoven relationship, the plaintiff has been allowed standing to assert the rights of third persons not before the Court.[6] In these situations, the general rule denying standing to raise another's constitutional rights is outweighed by the need to protect the fundamental rights of these third parties.

This Court is in agreement with the reasoning of the Court in Young Women's Christian Association of Princeton, N. J. v. Kugler,[7] that the plaintiff physician has standing to litigate any deprivations of the constitutional rights of his pregnant women patients. Further, he has standing to litigate on his own behalf because he has suffered some, albeit small, economic loss and because the hospital rule may infringe on his right to practice medicine.

## STATE ACTION

The central jurisdictional question in this lawsuit concerns the issue of whether there is sufficient state action to confer upon this Court subject matter jurisdiction. For a private hospital to be subject to the Civil Rights Act of 1871[8] or the Fourteenth Amendment,[9] its actions must be imbued with state involvement to a significant degree. Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In this area, there is no precise formula. "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Id. at 722, 81 S.Ct. at 860. The activity of the state must be examined to determine whether the state has "insinuated itself" into joint participation with the challenged activity. Mulvihill v. Julia L. Butterfield Memorial Hospital, 329 F.Supp. 1020, 1022 (S.D. N.Y.1971). However, not every form of state aid and participation amounts to state action. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Weigand v. Afton View Apartments, 473 F.2d 545 (8th Cir. 1973); Jackson v. Norton-Children's Hospitals, Inc., 487 F.2d 502 (6th Cir. 1973).

Although the Supreme Court did not expressly decide whether a private hospital could refuse to perform abortions, this Court feels that it is implicit in the language of the Court in Doe v. Bolton:

"Viewing the Georgia statute as a whole, we see no constitutionally justifiable pertinence in the structure for the advance approval by the abortion committee. With regard to the protection of potential life, the medical judgment is already completed prior to the committee stage, and review by a committee once removed from diag-

---

6. See Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L. Ed. 1042 (1923); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); N.A.A.C.P. v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Akron Board of Education v. State Board of Education of Ohio, 490 F.2d 1285 (6th Cir. 1974).

7. 342 F.Supp. 1048, 1055 (D.N.J.1972); Nyberg v. City of Virginia, 361 F.Supp. 932, 936 (D.Minn.1973).

8. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within

the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

9. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property; without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U. S. Constitution, Amendment XIV, § 1.

nosis is basically redundant. We are not cited to any other surgical procedure made subject to committee approval as a matter of state criminal law. The woman's right to receive medical care in accordance with her licensed physician's best judgment and the physician's right to administer it are substantially limited by this statutorily imposed overview. And the hospital itself is otherwise fully protected. Under § 26–1202(e), the hospital is free not to admit a patient for an abortion. It is even free not to have an abortion committee. Further, a physician or any other employee has the right to refrain, for moral or religious reasons, from participating in the abortion procedure. These provisions obviously are in the statute in order to afford appropriate protection to the individual and to the denominational hospital. Section 26–1202(e) affords adequate protection to the hospital, and little more is provided by the committee prescribed by § 26–1202(b)(5)." 410 U.S. at 197–198, 93 S.Ct. at 750.

■ Therefore, this Court is in accord with the reasoning of recent decisions that a private hospital, whether denominational or not, is free to decide the elective abortion question for itself.[10] On the other hand, a purely public hospital, such as the one involved in Hathaway v. Worcester City Hospital,[11] could not prohibit elective abortions if it had the available space and personnel and performed other surgical procedures involving no greater risk to the patient.

■■ Although the Orange Memorial Hospital Corporation, as noted previously, has received significant amounts of monetary support from governmental sources, this is not determinative of the issue at hand. This Court is convinced that the regulation or support from the State must foster or encourage the injury complained of by Dr. Greco. In other words, there must be governmental involvement in the very activity that is being challenged. If the State is completely neutral and does not foster or encourage the hospital policy causing the plaintiff's injury, then there is no state action. Moose Lodge No. 107 v. Irvis, *supra*; Driscoll v. International Union of Operating Engineers, Local 139, 484 F.2d 682, 690 (7th Cir. 1973); Doe v. Bellin Memorial Hospital, *supra*, 479 F.2d 760–761; Ward v. St. Anthony Hospital, 476 F.2d 671, 675 (10th Cir. 1973); Mulvihill v. Julia L. Butterfield Memorial Hospital, *supra*, 329 F.Supp. at 1023; Shulman v. Washington Hospital Center, 222 F.Supp. 59 (D.D.C.1963).

■ In the present case the Court finds that the Orange Memorial Hospital is a private hospital operated by the Orange Memorial Hospital Corporation, which is a non-profit corporation. The evidence supports the conclusion that Orange County and the State of Texas have never sought to regulate or influence the medical policy to be followed within the hospital and in particular with respect to the performance or non-performance of elective abortions therein. The County and State have remained completely neutral on the medical policy of the hospital. Therefore, there is no state action involved and the defendants were not acting under color of state law. The Court lacks subject matter jurisdiction to entertain this suit, and the plaintiff's complaint is hereby dismissed.

Judgment shall be entered in accordance with the findings made by the Court herein.

10. Doe v. Bellin Memorial Hospital, 479 F.2d 756, 760 (7th Cir. 1973); Allen v. Sisters of Saint Joseph, 361 F.Supp. 1212 (N.D.Tex. 1973), appeal dismissed 490 F.2d 81 (5th Cir. 1974); Watkins v. Mercy Medical Center, 364 F.Supp. 799, 803 (D.Idaho 1973).

11. 475 F.2d 701 (1st Cir. 1973).