

# THE ATTORNEY GENERAL
## OF TEXAS

October 27, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Brad Wright
Chairman
Public Health Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-816

Re:  Whether a hospital district is required to make its facilities available for non-therapeutic abortions

Dear Representative Wright:

You ask whether the board of managers of the City of Amarillo Hospital District (AHD) may adopt a policy of refusing to make its facilities available for non-therapeutic abortions. We believe such a policy violates the United States Constitution in certain instances. The AHD was created by chapter 136, Acts 1957, 55th Legislature, Regular Session under authority of article IX, section 5, of the Texas Constitution. The pertinent constitutional provision authorizes the creation of a hospital district "to be coextensive with and have the same boundaries as the incorporated city of Amarillo as such boundaries now exist or as they may hereafter be lawfully extended."[1] Tex. Const. art. XI, §5(a).

The district's enabling statute describes the district's purpose as "owning and operating a hospital or hospital system for indigent and needy persons. . . ." Acts 1957, 55th Leg., ch. 136, §1, at 298. Various

---

1.  A proposed amendment to article IX, section 5 will appear on the ballot at the November 3, 1987 constitutional amendment election. If adopted, the amendment authorizes the legislature to expand the service area of the AHD to include certain residents of Randall County and to permit Randall County to provide financial assistance to the district.

provisions of the act provide for a Board of Hospital Managers to be appointed by the governing body of the city of Amarillo; for the board to contract with other counties and incorporated cities for the care and treatment of their residents; for the board to promulgate rules and regulations for the operation of the hospital; and for the transfer of ownership to the AHD of lands, buildings, and equipment that is situated in the district that was owned by the city of Amarillo or Potter County and used to furnish medical services or hospital care to indigents or needy persons by those two entities. Id. at §§4, 5.

The enabling statute was amended by chapter 439, Acts of the 64th Legislature, Regular Session, 1975 to allow the city governing body and the board to fix and collect charges for the occupancy and use of any of the hospital facilities and services in the amount and manner determined by the board. See Acts 1975, 64th Leg., ch. 439, §3A(g), at 1178, 1179-80. The hospital administrator determines a patient's ability to pay for services. See Acts 1957, 55th Leg., ch. 136, §14, at 298, 304.

You tell us that the AHD operates Northwest Texas Hospital, a general public hospital. It is in the public hospital that nontherapeutic abortions would be prohibited.[2] Generally, a hospital district's power and any limitations on the exercise of that power are found in the constitution and the hospital district's enabling statute. Attorney General Opinion M-171 (1967). Special purpose districts have only the authority which is clearly granted by the legislature. Tri-City Fresh Water Supply District No. 2 of Harris County v. Mann, 142 S.W.2d 945 (Tex. 1940). See Attorney General Opinion Nos. JM-258, JM-257 (1984).

---

2. The discussion in this opinion is limited to first and second trimester abortions. House Bill No. 410 enacted by the 70th Legislature took effect on September 1, 1987. The bill prohibits the abortion of a viable fetus during the third trimester except to prevent the death or serious impairment of physical or mental health of the mother or because the fetus has been diagnosed as having a severe, irreversible abnormality. See Acts 1987, 70th Leg., ch. 469, at 4100.

In 1985, the state constitution was amended to include article IX, section 9A, which allows the legislature to determine the health care services a hospital district is required to provide. No legislation has been enacted pursuant to the amendment. The Indigent Health Care and Treatment Act, article 4438f, V.T.C.S., was also enacted in 1985. This act expressly exempts hospital districts from the mandatory services provision required under section 11.01(d) of the act.

Section 11.02 of the Indigent Health Care Act provides:

> A hospital district shall provide the health care services required under the Texas Constitution and the statute creating the district.

Neither article IX, section 5, of the constitution, nor the district's enabling statute specifies the medical services to be provided. Both provisions speak in general terms about the provision of medical aid and hospital care. Therefore, absent subsequent legislative enactment, a hospital district may generally determine which services it will provide.

On the issue of abortion, however, the AHD must be guided by federal law. The United States Supreme Court invalidated the Texas laws concerning abortion in Roe v. Wade, 410 U.S. 113 (1973). See also Doe v. Belton, 410 U.S. 179 (1973). Roe established that the constitutional right of privacy encompasses a woman's decision whether or not to terminate her pregnancy. See id. at 153. A state must demonstrate a compelling interest when restricting a fundamental right. Id. at 155. The court held that the state has no compelling interest during the first trimester of pregnancy and that the decision to abort during that period must be free of interference by the state. Id. at 163. The privacy right involved in the abortion decision is not absolute. Id. at 154. The court found state regulation of abortions during the second trimester appropriate to the extent that the regulation relates to the preservation and protection of the mother's health. Id. at 163. The state's compelling interest in protecting potential life was found to exist from the point of viability of the fetus. Id. This interest, according to Roe, allows the state to proscribe abortion during the third trimester, except when it is necessary to preserve the life or health of the mother. Id. at 164.

Ten years after the Roe decision, the Court re-affirmed its rule of non-interference by the state in the first trimester abortion decision and the requirement of a compelling state interest for restricting or prohibiting abortions at later stages of pregnancy. City of Akron v. Akron Center for Reproductive Health, Inc., 462 U.S. 416 (1983). Speaking for the majority, Justice Powell wrote:

> These cases come to us a decade after we held in Roe v. Wade [citation omitted] that the right of privacy, grounded in the concept of personal liberty guaranteed by the Constitution, encompasses a woman's right to decide whether to terminate her pregnancy. Legislative responses to the Court's decision have required us on several occasions, and again today, to define the limits of a State's authority to regulate the performance of abortions. And arguments continue to be made, in these cases as well, that we erred in interpreting the Constitution. Nonetheless, the doctrine of stare decisis, while perhaps never entirely persuasive on a constitutional question, is a doctrine that demands respect in a society governed by the rule of law. We respect it today, and reaffirm Roe v. Wade.

Id. at 419-20.

Shortly after Roe v. Wade was decided, this office issued Attorney General Opinion H-369 (1974), a lengthy opinion on the status of state abortion laws and the permissibility of certain abortion regulations. One of the questions discussed in that opinion was whether a hospital may refuse to permit the performance of an abortion. The opinion traced the judicially drawn distinction between public and private hospitals on this issue and concluded that public hospitals may not refuse to perform abortions unless other similar medical procedures are likewise prohibited.[3]

---

3. For purposes of this opinion, we assume that Northwest Texas Hospital does perform other medically similar procedures.

Judicial decisions rendered after Attorney General Opinion H-369 support this conclusion with one limitation. The United States Supreme Court upheld a public hospital's refusal to provide a nontherapeutic abortion to an indigent patient in Poelker v. Doe, 432 U.S. 519, reh'g denied, 434 U.S. 880 (1977). Poelker reiterated the Supreme Court's position in Maher v. Roe, 432 U.S. 464 (1977) that public funding for abortions is not constitutionally required. The Supreme Court has not ruled directly on the question of a public hospital's refusal to provide nontherapeutic abortions to paying patients. However, there have been cases in other jurisdictions on this precise question.

Shortly after Roe v. Wade, supra, the First Circuit court in Doe v. Hale Hospital, 500 F.2d 144 (1st Cir. 1974), cert. denied, 420 U.S. 907 (1975) denied a Massachusetts municipal hospital's authority to "forbid elective abortions so long as it offers medically indistinguishable procedures, without violating the fundamental rights associated with the decision to terminate pregnancy set out in Roe v. Wade and Doe v. Bolton." Doe, 500 F.2d at 147.

Wolfe v. Schroering, 541 F.2d 523 (6th Cir. 1976) held unconstitutional a Kentucky institutional conscience clause statute as applied to public hospitals.

> However, the conscience clause cannot constitutionally permit 'public' hospitals ('state actors'), to refuse to permit the performance of abortions for 'ethical' reasons. Such permission would circumvent, if not directly contravene, Roe, supra, [citation omitted], which permits the state to interfere with the woman's abortion decision only in the second trimester, and then only to protect maternal health, and in the post-viability stage, to protect maternal health and fetal life. The conscience clause, as applied to public hospitals, unconstitutionally interferes with the woman's constitutional right to abortion by permitting public hospitals to proscribe first trimester abortions and to proscribe second trimester abortions on grounds broader than 'maternal health.' [Citations omitted.]

541 F.2d at 527. A similar conscience clause was stricken in Minnesota insofar as it applied to public facilities. Hodgson v. Lawson, 542 F.2d 1350 (8th Cir. 1976).

In Doe v. Charleston Area Medical Center, Inc., 529 F.2d 638 (4th Cir. 1975) the court held unconstitutional a private hospital's policy of refusing to perform non-therapeutic abortions. The Charleston court found the requisite "state action" in the fact that the hospital policy was formulated in order to comply with a West Virginia criminal abortion statute.

In August, 1973, seven months after Roe v. Wade, supra, an injunction was obtained in federal district court in Minnesota to compel a municipal hospital commission to provide its facilities for the performance of abortions and to allow physicians to perform abortions at their discretion in accordance with Roe v. Wade and Doe v. Bolton. The hospital had adopted a resolution proscribing abortions except when necessary to save the life of the mother. Nyberg v. City of Virginia, Minnesota, 361 F.Supp. 932 (D. Minn. 1973), aff'd, 495 F.2d 1342 (8th Cir. 1974), appeal dism'd, 419 U.S. 891 (1974) [hereinafter Nyberg I]. In 1980 the city of Virginia sought unsuccessfully to vacate the Nyberg I injunction. Nyberg v. City of Virginia, 667 F.2d 754 (8th Cir. 1982), appeal dism'd, 462 U.S. 1125 (1983) [hereinafter Nyberg II]. The city relied on Maher v. Roe, supra, Poelker v. Doe, supra, and other Supreme Court decisions issued subsequent to Nyberg I in seeking relief from the seven year injunction. The Nyberg II court refused to vacate the injunction, reasoning that the cases relied on dealt with the issue of abortion funding. The hospital resolution found constitutionally offensive in Nyberg I applied to indigents and nonindigents alike. Nyberg II distinguished the Nyberg I requirement that a public hospital make its facilities available for the performance of abortions by staff physicians from the cases in which the availability of direct public expenditures was at issue.

> In Poelker, the Supreme Court determined that a city hospital was not required to spend public funds to hire doctors who would perform abortions or otherwise provide publicly financed hospital services for indigent women.

> There is a fundamental difference between providing direct funding to effect the

> abortion decision and allowing staff physicians to perform abortions at an existing publicly owned hospital. While it is true public money may have been used to build the hospital, that capital expenditure was to provide facilities for a large number of operations, of which first trimester abortions was but one. The decision that a city must allow staff physicians to perform abortions at the sole community hospital is far removed from those decisions which do not require direct public expenditure to facilitate abortions. (Emphasis in original.)

667 F.2d at 758.

The Fifth Circuit was confronted with the issue of a hospital's policy to prohibit elective abortions in Greco v. Orange Memorial Hospital Corporation, 513 F.2d 873 (5th Cir.), cert. denied, 423 U.S. 1000 (1975). The Greco court determined that the hospital was private, that there was no state action involved in the abortion policy, and that the circumstances did not warrant "imposition of constitutional restrictions upon Orange Memorial Hospital." 513 F.2d at 882. The appellate panel did not expressly state that a different result would have been reached upon a finding that the hospital was public; however, the decision strongly implies this conclusion. Moreover, express language to this effect is found in the district court's ruling on this matter. Greco v. Orange Memorial Hospital Corporation, 374 F.Supp. 227 (E.D. Tex. 1974). Judge Steger, in dismissing the complaint, wrote:

> Therefore, this Court is in accord with the reasoning of recent decisions that a private hospital, whether denominational or not, is free to decide the elective abortion question for itself. On the other hand, a purely public hospital, such as the one involved in Hathaway v. Worcester City Hospital, could not prohibit elective abortions if it had the available space and personnel and performed other surgical procedures involving no greater risk to the patient.

374 F.Supp. at 233.

The most recently reported federal decision discussing the issue of a ban on abortions in public facilities is <u>Reproductive Health Services v. Webster</u>, 655 F. Supp. 1300 (W.D. Mo. 1987). The court invalidated several provisions of a Missouri statute, including one which made it unlawful

> for any public facility to be used for the purpose of performing or assisting an abortion not necessary to save the life of the mother or for the purpose of encouraging or counseling a woman to have an abortion not necessary to save her life.

655 F.Supp. at 1316, n. 47. Discounting the defendant's reliance on earlier Supreme Court abortion funding cases, the district court held that <u>Poelker v. Doe</u>, <u>supra</u>, was not controlling. The Missouri statute at issue in <u>Webster</u> would prohibit the use of public facilities for all non-therapeutic abortions, regardless of the patients' ability to pay. <u>Webster</u> cited <u>Nyberg II</u>, <u>supra</u>, to support its conclusion that direct funding may be disallowed but use of public facilities may not be prohibited.

In our opinion, the relevant federal cases on abortion may be summarized as follows:

> 1. state interference with first trimester abortions is unconstitutional;
>
> 2. second trimester restrictions must be based on an interest in the mother's health;
>
> 3. third trimester abortions of viable fetuses may be prohibited except to protect the life or health of the mother;
>
> 4. public funding of abortions is not constitutionally required; and
>
> 5. public facilities may not refuse to allow the use of their facilities for the performance of abortions for paying patients, if similar medical procedures are performed there.

It is our opinion, therefore, that the AHD may not adopt a policy that would prohibit the use of its public hospital for the performance of nontherapeutic abortions

for paying patients.   Neither   state   nor   federal   law requires the AHD to fund nontherapeutic abortions.

## S U M M A R Y

Absent specific legislation, the  Board of Managers of the City of Amarillo Hospital District  may   generally  determine   which medical services it will provide.  The board may not adopt a policy to refuse to make its public hospital  available for  the  perfor- mance of  nontherapeutic  first  and  second trimester  abortions  for  paying  patients. Neither state nor  federal law requires  the City of Amarillo  Hospital District to  fund nontherapeutic abortions.

Very truly yours

**JIM  MATTOX**
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General