Nancy COE and Patricia Noe et al.,
Plaintiffs,

v.

Richard E. GERSTEIN, etc., et al.,
Defendants.

No. 72–1842–Civ–JE.

United States District Court,
S. D. Florida.

Aug. 14, 1973.

As Amended Aug. 22, 1973.

Rehearing Denied Oct. 29, 1973.

Final Judgment April 17, 1974.

Robert Shevin, Atty. Gen., Tallahassee, Fla., and Robert Olian, Asst. Atty. Gen., Miami, Fla., for defendants-appellants.

Roy Lucas, Washington, D. C., and Joseph P. Farina, Miami Shores, Fla., for plaintiffs-appellants.

Before DYER, Circuit Judge, and MEHRTENS and EATON, District Judges.

## OPINION

This class action for declaratory and injunctive relief, heard by a duly convened three-judge district court, is a constitutional challenge to Florida's regulation of therapeutic abortions. Three plaintiffs in this proceeding—Carmichael, Shore and Herman—are Florida-licensed physicians practicing in the field of Family Medicine. They attack the constitutionality of Fla.Stat.Ann. § 458.22(3) (1972) [hereinafter the "spousal or parental consent" requirement],[1] and § 10D–0.05 of Rules on Termination of Pregnancy, Division of Health, Ch. 10D–65 (1972) [hereinafter "Rules", Ch. 10D–65], prohibiting public advertisement of medical facilities available for the termination of pregnancies. The complaint was filed prior to January 22, 1973, the date on which the United States Supreme Court handed down its decisions in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L. Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). Subsequent to that date plaintiffs Coe[2] and Noe[3], two females each pregnant for less than three months, were permitted to intervene. They join the physician-plaintiffs in attacking the constitutionality of the "spousal or parental consent" requirement, and in addition, challenge both Fla.Stat.Ann. § 458.22(2) (1972) [hereinafter the "approved facility" requirement], and Ch. 10D–65 of the "Rules" in its entirety—on the grounds that they are constitutionally impermissible State interferences with a woman's right of privacy, as that right encompasses the decision to terminate a pregnancy. The defendants are officials of the State of Florida charged with the enforcement of the disputed sections of the statute and the rules promulgated under the statute.

■ The State of Florida has expressly abandoned any defenses relating to the "approved facility" requirement or to the "Rules", Ch. 10D–65 in its entirety, acknowledging that these issues are foreclosed by the decisions in Roe v. Wade, *supra*, and Doe v. Bolton, *supra*. We agree that these issues are foreclosed and hold that F.S.A. § 458.22(2), the "approved facility" requirement, and the Division of Health Rules, Ch. 10D–65, are constitutionally invalid because they make no distinction between the first trimester of pregnancy, a period in which the State may not interefere by regulating a woman's decision to terminate a pregnancy, and the latter trimesters where the State may impose regulations reasonably related to the preservation and protection of maternal health. Roe v. Wade, 93 S.Ct. at 731–732. In addition, neither the statute nor the "Rules" makes any distinction between the period prior to viability of the fetus,

1. "F.S.A. sec. 458.22(3) Writings required.—
"One of the following shall be obtained by the physician prior to terminating a pregnancy:
(a) The written request of the pregnant woman and, if she is married, the written consent of her husband, unless the husband is voluntarily living apart from the wife, or
(b) If the pregnant woman is under eighteen years of age and unmarried, in addition to her written request, the written consent of a parent, custodian or legal guardian must be obtained, or
(c) Notwithstanding paragraphs (a) and (b) of this subsection, a physician may terminate a pregnancy provided he has obtained at least one corroborative medical opinion attesting to the medical necessity for emergency medical procedures and to the fact that to a reasonable degree of medical cer-

tainty the continuation of the pregnancy would threaten the life of the pregnant woman."

2. Plaintiff Coe is a real person suing under a pseudonym to preserve her anonymity. She is a married woman unable to obtain her husband's consent for a therapeutic abortion which her physician has certified to be necessary to preserve her health. She is a citizen of Florida and a resident of this District.

3. Plaintiff Noe is a real person suing under a pseudonym to preserve her anonymity. She is an unmarried minor unable to obtain parental consent for a therapeutic abortion which is necessary to preserve her health. She is a citizen of Florida and a resident of this District.

a period in which the State has no compelling interest in preserving and protecting potential life, and the period after viability where the State may regulate the termination of pregnancy to protect potential life. *Id.* Since the "approved facility" requirement and the "Rules" do not make these distinctions, they "sweep too broadly . . . [and], therefore, cannot survive the constitutional attack made upon [them] here." *Id.* at 732.

The only issue which the State of Florida has contested is plaintiffs' constitutional attack on F.S.A. § 458.22(3), the "spousal or parental consent" requirement. Roe v. Wade, *supra,* and Doe v. Bolton, *supra,* are not directly in point on this question. Those cases dealt specifically with the State's interest in the protection of potential life, which may be termed the interest of the fetus, and the State's interest in the protection of maternal health, which may be termed the interest of the mother. They did not address the interests of third parties, such as the husband or father, or the parents of an unmarried pregnant female minor. Neither issue was raised by the factual or statutory setting of the two cases, and the Supreme Court did not decide the constitutionality of these types of consent provisions.[4]

In Roe v. Wade, *supra,* the Supreme Court concluded that "the right of personal privacy includes the abortion decision, but that this right is not unqualified and must be considered against important state interests in regulation." 93 S.Ct. at 727. State regulation limiting this right "may be justified only by a 'compelling state interest'." *Id.* at 728. Compelling state interests were recognized in two areas: (1) the State may intervene and regulate abortions to protect maternal health after approximately the end of the first trimester of pregnancy, and (2) the State may intervene and regulate, or even proscribe, abortions after the fetus becomes viable. *Id.* at 731–732. The State is therefore forbidden from any regulation, at least in order to protect maternal health or potential life, until these "compelling points" are reached; as a result, the pregnant woman's right of privacy is "sole" during the first trimester. *Id.* at 730.

■■ We are persuaded that if the State cannot interfere to protect the fetus' interest in its potential life until the compelling point of viability is reached, neither can it interfere on behalf of husbands or parents to protect their interests in that potential life until the fetus becomes viable. We are persuaded, also, that if the State cannot interfere to protect the pregnant woman's physical or mental health until approximately the end of the first trimester, neither can it interfere on behalf of husbands or parents to protect their interests in her health until that point is reached. If the State could demonstrate that the third-party interests sought to be protected by this provision attach at the moment of conception and are interests which fall completely outside the categories of protection of maternal health and potential life, Roe v. Wade, *supra,* would not be controlling and the provisions would withstand constitutional attack.

We recognize that the interest of the husband in the embryo or fetus carried by his wife, especially if he is the father[5], is qualitatively different from

4. "Neither in this opinion nor in Doe v. Bolton, *post,* . . . do we discuss the father's rights, if any exist in the constitutional context, in the abortion decision. No paternal right has been asserted in either of the cases . . . . We are aware that some statutes recognize the father under certain circumstances. North Carolina, for example . . . requires written permission for the abortion from the husband when the woman is a married minor, that is, when she is less than 18 years of age . . . .; if the woman is an unmarried minor, written permission from the parents is required. We need not now decide whether provisions of this kind are constitutional." Roe v. Wade, 93 S.Ct. at 733.

5. We recognize that the husband of the pregnant woman may not always be the father of

the interest which the mother may have in her health and the interest of the viable fetus in its potential life. The interest which a husband has in seeing his procreation carried full term is, perhaps, at least equal to that of the mother. The biological bifurcation of the sexes, which dictates that the female alone carry the procreation of the two sexes, should not necessarily foreclose the active participation of the male in decisions relating to whether their mutual procreation should be aborted or allowed to prosper. It may be that the husband's interest in this mutual procreation attaches at the moment of conception.

We recognize further that the interest of parents within a family unit is qualitatively different, at least in part, from the interest which a pregnant minor daughter may have in her maternal health and the interest which the viable fetus may have in its potential life. The State of Florida has urged persuasively that the family unit is, except by positive provision of state law to the contrary, a self-governing entity and that the traditional and primary obligation for the custody, care, control, and nurture of minor children resides in their parents.

But while these paternal and parental interests may be compelling, and may in fact exist at the moment of conception, it is apparent that not *all* paternal or parental interests fall outside the categories of protection of maternal health and potential life. We cannot avoid the conclusion that at least a portion of the interests which husbands and parents have in their pregnant wives or minor daughters may be reasonably related to protection of maternal health and protection of potential life. The failure of

the Florida "spousal or parental consent" requirement is that it gives to husbands and parents the authority to withhold consent for abortions for any reason or no reason at all. It allows a husband or parent to withhold consent out of concern for maternal health or the potential life of the fetus, in addition to other compelling reasons each may have for doing so.

As we learn from Roe v. Wade, *supra*, the State has no authority to interfere with a woman's right of privacy in the first trimester to protect maternal health nor can it interfere with that right before the fetus becomes viable in order to protect potential life. It follows inescapably that the State may not statutorily delegate to husbands and parents an authority the State does not possess.

We do not learn from the opinion in Roe v. Wade, *supra*, the age of plaintiff Roe, the pregnant woman who enjoyed the "fundamental", "*personal* right of privacy" [emphasis supplied] recognized by the Supreme Court. But we do know that a pregnant woman under 18 years of age cannot, under the law, be distinguished from one over 18 years of age in reference to "fundamental", "*personal*", constitutional rights.

Accordingly, we are compelled to hold F.S.A. § 458.22(3), the "spousal or parental consent" requirement unconstitutional.[6] Since the primary substantive sections of the Florida Abortion Act, F.S.A. § 458.22 are unconstitutional, the minor procedural and definitional provisions are no longer supported and the entire Act is invalid.

In holding the Florida "spousal or parental consent" requirement unconstitutional, this Court, of course, does not

---

the potential child. We do not undertake to discuss the situation where the husband is not the father of the potential child, since the statute does not purport to deal with such a situation.

**6.** Because of the practical problems involved in drafting or enforcing a statute which

would exclude interests related to maternal health in the first trimester, we are inclined to agree with Mr. Justice Rehnquist (dissenting) that, as a practical matter, "a State may impose virtually no restrictions on the performance of abortions during the first trimester of pregnancy." Roe v. Wade, 93 S.Ct. at 736.

limit the traditional and substantial right which husbands and parents have in asserting their respective interests within the family unit. Certainly husbands ought to participate with their wives in decisions relating to whether or not their mutual procreation should be aborted or allowed to prosper, and parents ought to advise and guide their unmarried, minor daughters in a decision of such import. But a state which has no power to regulate abortions in certain areas simply cannot constitutionally grant power to husbands and parents to regulate in those areas. Therefore, husbands and parents cannot look to the state to prosecute and punish the phyician (or other participants) who performs an abortion against the wishes of the husbands and parents.

We find it unnecessary to provide plaintiffs injunctive relief. We assume the defendants and other state officials charged with enforcement of the invalidated statute and its derivative rules will give full recognition to the judgment of this Court.

The Court retains jurisdiction to enter whatever orders necessary to be entered to effectuate this declaratory judgment.

### FINAL JUDGMENT

A decision having been duly rendered in this case in the opinion of August 13, 1973, as amended August 22, 1973, it is

Ordered and adjudged, that:

1. The "spousal or parental consent" requirements of Fla.Stat.Ann. § 458.-22(3) (1972) are unconstitutional.

2. The "approved facility requirement" of Fla.Stat.Ann. § 458.22(2) (1972) is unconstitutional.

3. Section 10D–0.05 of Chapter 10D–65 (1972) Rules on Termination of Pregnancy, Division of Health which prohibits public advertisement of medical facilities available for abortion is unconstitutional.

4. The motions of Plaintiffs Paula Poe, Rita Roe, Nancy Coe, Patricia Noe, Pamela Harris, and Dr. Lyon P. Carmichael for permanent and preliminary injunctions, and temporary restraining order are denied.

5. The motions of Plaintiffs Nancy Coe, Patricia Noe, and Dr. Lynn P. Carmichael for declaratory judgment are granted.

6. This judgment is entered nunc pro tunc, effective October 29, 1973, the date the motion for rehearing was denied.