Jane **DOE** et al., Plaintiffs, Appellees,

v.

**HALE HOSPITAL** et al., Defendants;
Appellants.

No. 74–1078.

United States Court of Appeals,
First Circuit.

Argued June 4, 1974.

Decided July 12, 1974.

Robert D. City, Boston, Mass., with whom A. David Mazzone and Moulton, Looney, Mazzone, Falk & Markham, Boston, Mass., were on brief, for appellants.

Nancy C. Gertner, Boston, Mass., with whom Silverglate, Shapiro & Gertner, John Reinstein, James C. Hamilton, and Hamilton & Lamson, Boston, Mass., were on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Once again this court is faced with a legal repercussion of the landmark Supreme Court decisions in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 755, 35 L.Ed.2d 147 (1973). This time, as in Hathaway v. Worcester City Hospital, 475 F.2d 701 (1st Cir. 1973), we face the question of the obligation of a public hospital to make its facilities available to women seeking abortions.

The pseudonymous plaintiffs, Jane Doe and Rebecca Doe, and plaintiff-intervenors, Jane Doe II, III, IV, and V, at the time they became plaintiffs, were

pregnant and had consulted a licensed physician who had found an abortion in their best interest. Although class action status was sought on behalf of a class consisting of women in both first and second trimesters, the district court ruled that since all of the original and intervening plaintiffs were in their first trimesters, class action would be allowed, but restricted to those in their first trimester. The suit is a civil rights action seeking declaratory and injunctive relief against rules, policies and practices of defendants restricting use of the facilities of the Hale Hospital for the performance of abortions, which rules, practices and policies are alleged to infringe rights of privacy associated with the decision of a woman to terminate her pregnancy, and are also alleged to deny equal protection of the laws, all in violation of the United States Constitution.

Defendants are the Hale Hospital, a public hospital owned by the city of Haverhill, Massachusetts, and operated by a Board of Trustees (appointed by the mayor of the city), the Director of the Hospital, and the members of its Board of Trustees. For some time Hospital rules have permitted the performance of "therapeutic" abortions, but have forbidden "elective" ones.[1] After the Supreme Court had handed down its abortion decisions the Executive Committee of the Hale Hospital Medical Staff, on February 22, 1973, issued a report to the Hospital Trustees informing the trustees that the hospital possessed adequate medical staff expertise, adequate physical facilities, and adequate supportive personnel for the performance of elective abortions, and that the pertinent guidelines promulgated by the state Department of Public Health would be met by existing hospital regulations and practices. After approval of the report by vote of the medical staff it was submitted to the Board. On March 29, 1973 the Trustees voted first to allow elective abortions to be performed at the Hospital, but second that implementation of the new policy be deferred until certain matters could be clarified. The City Council of Haverhill then asked the Hospital Trustees to reconsider their decision concerning abortions and on April 9, 1973 the trustees voted to table implementation of the abortion policy approved on March 29 until answers to questions concerning the matter could be received from the state Attorney General and from the leaders of the state Senate and House of Representatives.

On May 21, 1973, Dr. Baratt, a specialist in obstetrics and gynecology and a member of the staff of the Hale Hospital, scheduled the performance of elective abortions upon the two original plaintiffs at the Hospital. On the same day the Hospital Director cancelled the scheduled abortions on the grounds that the Trustees of the Hale Hospital did not permit elective abortions to be performed. Thereafter, on June 26, 1973, the Trustees clarified matters by voting unequivocally to bar the performance of elective abortions at the Hospital.

The district court granted temporary restraining orders in favor of each of the plaintiffs pursuant to which each had an abortion performed at the Hale Hospital. Thereafter the court issued a permanent injunction barring the individual defendants, individually or collectively, from enforcing rules and policies forbidding the use of the Hospital's facilities for elective abortions. Although the court's order is worded broadly its opinion is confined to consideration of

---

1. Under the Hospital's rules an abortion will be permitted if, in the judgment of the Hospital's Therapeutic Abortion Committee, "continued pregnancy in the presence of serious disease constitutes a significant threat to the life or health of the mother." Such we shall refer to as a "therapeutic abortion," using "elective abortion" to describe an abortion which would not be approved by the hospital rules. Defendants do not claim that, if Roe v. Wade and Doe v. Bolton require that Hale Hospital allow performance of abortions, its Therapeutic Abortion policy would be in compliance with the requirements of those cases.

first trimester pregnancies only. "The outcome", in the words of the court, was "inexorably indicated on the basis of a syllogism whose major premise is the opinion of the Supreme Court of the United States in Roe v. Wade [*supra*] and whose minor premise is the opinion of the United States Court of Appeals for the First Circuit construing Roe v. Wade in the context of a publicly-supported municipal hospital . . . . [I]n Hathaway v. Worcester City Hospital [*supra*] . . .". We agree.

It is undisputed that the Hospital permits use of its facilities for the performance of medical procedures which are in the same general area of medical practice as are abortions, some of which expose the patient to greater risk and impose a greater demand upon the resources of the Hospital, and at least one of which is practically identical to the procedures used to perform a first trimester abortion. Indeed, at the time that the performance of the kinds of abortions sought by plaintiffs was barred, the Hospital, as we have noted, permitted therapeutic abortions to be performed. Thus, it is clear that on a medical basis elective abortions are indistinguishable from procedures permitted and performed at the Hale Hospital, and that what we said in Hathaway v. Worcester City Hospital, *supra*, is fully relevant here:

> "[O]nce the state has undertaken to provide general short-term hospital care, as here, it may not constitutionally draw the line at medically indistinguishable surgical procedures that impinge on fundamental rights." 475 F.2d at 706.

*See also* Nyberg v. City of Virginia, 495 F.2d 1342 (8th Cir. 1974).

■ Defendants seek to distinguish *Hathaway* on two grounds which were not explicitly presented in that case.[2] First, defendants assert that plaintiffs do not present here a substantial enough deprivation of their rights to justify relief. They claim that elective abortions are available to plaintiffs in clinics or hospitals in Boston, and that the effect of Hale Hospital's ban on such abortions is merely to "require . . . some extra travel." We need not determine whether there may exist situations where the practical impact of a restriction upon abortions would be so insignificant that constitutional scrutiny would not be triggered. That is certainly not the situation here. No other hospital or clinic exists in the city of Haverhill for the performance of elective abortions and the record reveals that other hospitals in the Hale Hospital primary service area also do not permit such abortions. In addition, plaintiffs' physicians are members of the staff of the Hospital, and there is therefore clear advantage in the use of its facilities. As the Supreme Court made clear in Doe v. Bolton, it is not only complete proscription of abortion which is unconstitutional, but barriers which "unduly restrict" the rights of the woman, *see* 410 U.S. at 198, 93 S.Ct. 755. That there has been restriction of the rights of women who seek elective abortions in Hale Hospital is clear. Whether these restrictions are undue requires consideration of defendants' second ground of defense.

■ While not denying that the Hospital possesses the staff and facilities to perform elective abortions, defendants argue that the addition of this kind of procedure to those already performed at the Hospital would severely tax already

---

2. Defendants also point to Chapter 521 of the Massachusetts Acts of 1973 which was passed subsequent to our decision in *Hathaway*. However, that law refers only to the rights of "privately controlled" hospitals or other health facilities and thus has little relevance here. While the Massachusetts law also permits individuals associated with any hospital to decline to participate in the performance of an abortion on moral or religious grounds, there is no evidence that severe disruption of hospital routine leading to endangerment of the safety of patients will result from the possible need to accommodate the moral or religious convictions of hospital staff.

strained resources. In particular, the physical facilities are said to be unable to bear any major additional load without causing significant problems. However, other than the fact that they have not been allowed before, no reason is given why elective abortions are, on a medical basis, the most appropriate class of procedure to be sacrificed as a result of overcrowding of hospital facilities. And it cannot be argued that, by permitting elective abortions, patients whose conditions are more serious from a medical standpoint will be disadvantaged, since plaintiffs do not seek to displace such patients. All that is sought is that elective abortions be accorded the same standing as other procedures of a similar medical nature.

Under these circumstances the impact upon the Hospital and its patients will at worst be some increment in the delay in scheduling elective medical procedures, and perhaps an increase in the incidence of schedule cancellations of such procedures with the inconvenience of having to reschedule them. This is a matter of valid concern to hospital administrators, but it is far from the kind of compelling interest that must be demonstrated when rights are at stake which are " 'fundamental' or 'implicit in the concept of ordered liberty' ", Roe v. Wade, *supra*, 410 U.S. at 152, 93 S.Ct. at 726. Therefore, the restrictions placed by the Trustees of the Hale Hospital upon the rights of women to determine whether or not to have an abortion are "undue" in the sense that they are well beyond those needed to preserve a compelling state interest,[3] with the consequence that constitutionally protected rights have been denied.

We wish to reaffirm what the district court was careful to point out, that its order "in no way impinges upon the authority of the hospital Trustees and the Director of the hospital to make hospital facilities available to persons seeking elective abortions only on the same terms and subject to the same conditions as those imposed upon other would-be users of the hospital facilities. Nor does this order require that any individual member of the staff of Hale Hospital, or any employee of Hale Hospital, participate or assist in any way in the performance of these abortions if that person as a matter of conscience objects to so doing." Moreover, as we said in Hathaway v. Worcester City Hospital, "we are not mandating the city or state to maintain this hospital, or to retain its present size, staff, or facilities. The hospital is not required to perform all kinds of nontherapeutic or even all therapeutic surgical procedures," 475 F. 2d at 706. Although thus limited, our holding is not to any degree diminished in force or in importance. A public medical facility, like the Hale Hospital, may not forbid elective abortions so long as it offers medically indistinguishable procedures, without violating the fundamental rights associated with the decision to terminate pregnancy set out in Roe v. Wade and Doe v. Bolton.

Affirmed.

3. In Doe v. Wohlgemuth, 376 F.Supp. 174 (W.D.Pa.1974) (three judge court), Pennsylvania's failure to include "elective" abortions in the coverage of the state's medical assistance program (providing reimbursement for certain medical costs of indigents) was found unconstitutional, despite the state's claim that its exclusion of such abortions conserved hospital space and state funds.