Deborah **DOE** and Dee Do, Individually and on behalf of all other women similarly situated, Plaintiffs,

v.

Leroy **ZIMMERMAN**, Individually and as District Attorney of Dauphin County, Pennsylvania, and on behalf of himself and all other District Attorneys in Pennsylvania except those in Allegheny and Philadelphia Counties, Defendants.

Civ. No. 74–897.

United States District Court,
M. D. Pennsylvania.
Dec. 3, 1975.

G. David Pauline, Central Pa. Legal Services, Harrisburg, Pa., Alan N. Linder, Lancaster, Pa., for plaintiffs.

Marion MacIntyre, Edward Friedman, Harrisburg, Pa., for defendants.

Before ADAMS, Circuit Judge, and HERMAN and MUIR, District Judges.

## OPINION

MUIR, District Judge.

This class action contests the validity of certain sections of the Pennsylvania Abortion Control Act, 1974, P.L. 639, No. 209, 35 P.S. § 6601 et seq. The challenged provisions are § 3(b)(i) which requires a husband's consent prior to the performance of an abortion, § 3(b)(ii) which requires parental consent prior to the performance of an abortion on an unmarried minor, §§ 5(a) and 6(b) which require a determination of the non-"viability" of the fetus prior to the performance of an abortion and § 6(d) which requires certain record-keeping by every facility in which an abortion is performed within the Commonwealth of Pennsylvania. A challenge to § 7, which prohibits the payment of public funds for an abortion which is not necessary in order to preserve the life or health of the mother, has been dropped in light of the present array of parties.

The United States Supreme Court has agreed to hear two cases which appear to encompass all of the issues raised in the instant case. See *Planned Parenthood of Central Missouri v. Danforth*, 392 F.Supp. 1362 (E.D.Mo. 1975), *stay granted*, 420 U.S. 918, 95 S. Ct. 1111, 43 L.Ed.2d 389 (probable jurisdiction noted October 6, 1975, 423 U.S. 819, 96 S.Ct. 31, 46 L.Ed.2d 36, and *Baird v. Bellotti*, 393 F.Supp. 847 (D. Mass.1975), probable jurisdiction noted, —— U.S. ——, 96 S.Ct. 390, 46 L.Ed.2d 301 (November 17, 1975, docketed No. 75–73). The Defendants submit that in light of these appeals this case should be stayed. Although the Plaintiffs agree that the cases before the Supreme Court could resolve all issues contained in this case, they do not concur in the request that this action be postponed. There is no indication of how promptly the Supreme Court will render its decisions in the aforementioned cases or that its decisions will necessarily dispose of the matters raised here. Because any further delay in this action would be significantly adverse to

the interests of the Plaintiffs, this Court will proceed to a decision.

## I. Spousal Consent.

Section 3(b)(i) [1] requires the written consent of the husband of a married woman before she may receive an abortion unless the husband is not readily available or unless the abortion is necessary to preserve the life or health of the mother.

 A state may intervene in the abortion decision based upon a compelling interest in the health of the pregnant woman after the first three months of pregnancy but is limited to activity reasonably related to her health such as issuance of regulations concerning the qualifications of the performing physican and the medical standards of the facilities involved. The state may intervene to prevent an abortion in the interest of the fetus in its potential life only when the compelling point of "viability" is reached and may at that point prohibit all abortions except those necessary to preserve the life or health of the mother. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed. 2d 201 (1973). Since the Supreme Court has precluded a state's intervention except as just described, the Court is of the view that the state may not interfere on behalf of a husband to protect his interest in the potential life of the fetus until the fetus becomes "viable". Cf. *Doe v. Rampton,* 366 F.Supp. 189 (D.Utah 1973), Circuit Judge Lewis, District Judges Ritter and Anderson; *Coe v. Gerstein,* 376 F.Supp. 695 (S.D. Fla.1974), Circuit Judge Dyer, District Judges Mehrtens and Eaton. Furthermore, the scheme created by the husband's consent provision fails to give any recognition to the mother's fundamental, though qualified, right to decide to have an abortion. Cf. *Planned Parenthood Association, et al. v. Fitzpatrick,* Civil No. 74–2440, 401 F.Supp. 554 (E.D.Pa. 1975), Circuit Judge Adams, District Judges Newcomer and Green, and cases collected therein. No attempt is made in the Act to balance the interest of the pregnant woman with whatever constitutional right the husband may have to participate in the abortion decision.

 The Defendants argue that § 3(b)(i) is a manifestation of the state's valid interest in promoting familial and conjugal relationships. The Court is in no position to pass on that argument because it is not presented by this controversy. Section 3(b)(i) does not in any way attempt to narrow its impact on the mother's fundamental right to an abortion by delineating the "familial" or "conjugal" grounds upon which a husband may rely to deny his consent. Thus, it is entirely possible under the statute for a husband to withhold his consent to an abortion capriciously or on the grounds, for example, of an interest in the potential life of the fetus even though the mother is only several weeks pregnant. Prohibition of an abortion based on such a withholding of consent constitutes an interference by the state in a manner which has already been invalidated by *Roe v. Wade, supra,* and *Doe v. Bolton, supra.* In *Coe v. Gerstein, supra,* a similar spousal consent requirement was declared defective on the grounds that it gave husbands the authority to withhold consent for abortions for many reasons or for no reason at all.

We hold that § 3(b)(i) of the Pennsylvania Abortion Control Act is unconstitutional.

1. Section 3(b)(i) reads as follows: "No abortion shall be performed upon any person in the absence of the written consent of (i) the spouse of such person provided that the whereabouts of such spouse can be learned from such person or from other readily available sources and he can be notified and that the abortion is not certified by a licensed physician to be necessary in order to preserve the life or health of the mother."

## II. Parental Consent.

Section 3(b)(ii)[2] requires the written consent of the parent or parents of an unmarried minor before she may receive an abortion unless a licensed physician certifies that the abortion is necessary to preserve her life.

■ This provision contains the same defects. as the spousal consent requirement discussed above. Primarily, it, too, makes no attempt to balance the interest of the unmarried minor against whatever constitutional right her parents may have to participate in the abortion decision. Also, like the spousal consent provision, no attempt has been made to tailor the parental consent provision so as to limit its impact on the pregnant minor's protected interests in an abortion. Finally, as is pointed out in *Planned Parenthood Association v. Fitzpatrick, supra,* the section inexplicably contradicts the provisions of Pennsylvania's "Minor's Consent to Medical, Dental, and Health Services" Act of 1970, P.L. 19, No. 10, §§ 1–5, 35 P.S. §§ 10101–10105.

We hold that § 3(b)(ii) of the Pennsylvania Abortion Control Act is unconstitutional.

## III. Abortions Subsequent to Viability.

■ Section 6(b)[3] provides that no abortion may be performed subsequent to "viability" of the fetus except where necessary, in the judgment of a licensed physician, to preserve the life or health of the mother. The joint operation of sections 6(b) and 5(a)[4] of the Abortion Control Act requires a determination prior to a nontherapeutic abortion that the fetus is not "viable."[5] If a finding of "viability" is made but a therapeutic abortion is nevertheless necessary to preserve the life or health of the mother, the person performing the abortion is required to use every degree of professional skill to preserve the life and health of the fetus. The Plaintiffs contend that these provisions are unconstitutional in that they permit the state to regulate abortions in a way contrary to the holdings in *Roe v. Wade, supra,* and *Doe v. Bolton, supra.* Because both sections incorporate the definition of "viable" found in § 2 of the Act and because that definition is unconstitutional, both section 5(a) and section 6(b) are likewise invalid.

Section 2's definition of "viable" is excerpted nearly word-for-word from the opinion in *Roe v. Wade, supra.* 410 U.S. page 160, at note 59, 93 S.Ct. 705. However, that phrase is not, as contended by the Defendants and as asserted in many cases and commentaries on *Roe,* the Supreme Court's holding as to the meaning of "viability". Similarly, *Roe* did not hold, as is often asserted, that

2. Section 3(b)(ii) reads as follows:
"No abortion shall be performed upon any person in the absence of the written consent of . . . (ii) one parent or person in loco parentis of such person if such person is under 18 years of age and unmarried, unless the abortion is certified by a licensed physician as necessary in order to preserve the life of the mother."

3. Section 6(b) reads as follows: "(b) No abortion shall be performed within the Commonwealth of Pennsylvania during the stage of a pregnancy subsequent to viability of the fetus except where necessary, in the judgment of a licensed physician, to preserve the life or health of the mother."

4. Section 5(a) reads as follows: "(a) Every person who performs or induces an abortion shall prior thereto have made a determination based on his experience, judgment or professional competence that the fetus is not viable, and if the determination is that the fetus is viable or if there is sufficient reason to believe that the fetus may be viable, shall exercise that degree of professional skill, care and diligence to preserve the life and health of the fetus which such person would be required to exercise in order to preserve the life and health of any fetus intended to be born and not aborted and the abortion technique employed shall be that which would provide the best opportunity for the fetus to be aborted alive so long as a different technique would not be necessary in order to preserve the life or health of the mother."

5. Section 2 of the Act defines "viable" as "the capability of a fetus to live outside the mother's womb albeit with artificial aid."

"viability" occurs around the end of the second trimester of pregnancy. See page 160, at n. 60, 93 S.Ct. 705. Both of those "definitions" of "viability" appear in a paragraph of the *Roe* opinion which canvasses various attitudes towards the question of when fetal life begins. But the Supreme Court nowhere in *Roe* enunciated a definitive explanation of the word "viability" and, in fact, expressly declined to do so: "We need not resolve the difficult question of when life begins." See page 159, 93 S.Ct. 705, 730. The net result of *Roe* is a standard for determining when a state's intervention to prevent abortions based on an interest in the potential life of the fetus is permissible without a precise definition of the crucial concept upon which that standard relies, i. e., "viability". Understandably, this has left pregnant women, doctors, legislatures, and courts in a quandary. The Pennsylvania Legislature has fastened upon the language of one definition of "viability" surveyed in *Roe*. The issue before the Court is whether use of that definition to mark the point of the state's permissible intervention meets the standards in *Roe*.

■ Merely because the phraseology of section 2 appears in *Roe* does not mean that its use as a standard for "viability" necessarily satisfies the principles outlined in the opinion. This Court finds that although the definition of "viability" used by the Pennsylvania Legislature was gleaned directly from *Roe v. Wade, supra,* it is nevertheless so vague that its effect is potentially to prohibit or deter abortions in a manner totally inconsistent with *Roe*. Cf. *Planned Parenthood Association v. Fitzpatrick, supra; Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). A doctor contemplating the performance of an abortion and faced with the definition of "viability" contained in § 2 is, prior to the operation, unable to determine with assurance whether he will be subject to prosecution if he operates. Although the statute only requires him to make an educated guess that there is an absence of "viability" before proceeding and apparently does not expose him to criminal sanctions if he is wrong, he nevertheless faces the possibility that there will be a challenge in a later criminal proceeding to the manner in which he made the assessment of non-viability prior to the performance of the abortion. Consequently, the uncertainty introduced by § 2 is likely to lead to a severe curtailment of permissible abortions because of the fear of criminal prosecution engendered in doctors who are requested to perform them.

■ As already noted previously, the Supreme Court did not hold that "viability" occurs sometime after the 24th week of pregnancy. The Court in *Planned Parenthood Association v. Fitzpatrick, supra,* while recognizing the lack of such a definitive holding, went so far as to find that the Supreme Court in *Roe* "intended" to set the lower limit of "viability" at that point. Although this Court is not prepared to adopt that position, it does agree that such a standard is much more specific and generates significantly less uncertainty in a physician contemplating the performance of an abortion. (Even that standard does not remove all doubt because there remains in such a situation the question as to what week of pregnancy a particular woman has attained.) Although this Court does not hold that a state is absolutely precluded from setting the lower limit of "viability" at a period prior to the 24th week of gestation, it does believe that a vague definition such as that found in the Pennsylvania Abortion Control Act of 1974 is potentially so far-reaching that it must be declared invalid along with the sections which incorporate it.

We hold that §§ 5(a) and 6(b) of the Pennsylvania Abortion Control Act, which incorporate the definition of "viability" contained in § 2 of that Act, are unconstitutional.

IV. Record-Keeping Provisions.

 Section 6(d) [6] of the Act requires every facility in which an abortion is performed within the Commonwealth of Pennsylvania to keep on file certain forms which contain various data and which are signed by persons who performed abortions. Certain of the items required to be kept on file relate to aspects of abortions which the state may not regulate. For example, on *all* abortions the name, address, and age of the woman involved are required. Also required is information concerning the husband of the woman involved which is unnecessary given our holding with respect to § 3(b)(i). A statement, apparently applying to all abortions, of the facts upon which the person performing the abortion relied to establish that the abortion was necessary to preserve the life or health of the mother is also mandated by § 6(d). Clearly, such a finding is not required for all abortions. The defects in § 6(d) are so pervasive as to render an attempt to identify and retain its untainted portions futile.

We hold that § 6(d) of the Pennsylvania Abortion Control Act is unconstitutional.

V. Appropriate Relief.

 As noted in *Planned Parenthood Association v. Fitzpatrick, supra,* a court should not enter injunctive relief if it is satisfied that the defendants will

honor a declaration that certain statutes are unconstitutional. *Poe v. Gerstein,* 417 U.S. 281, 94 S.Ct. 2247, 41 L.Ed.2d 70 (1974); *Douglas v. Jeannette,* 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Roe v. Wade, supra.* The Defendants in this case are 65 district attorneys. The Court cannot say with assurance on the present state of the record that each and every one of them will acquiesce in a declaratory judgment. The Court is of the view that the threat of criminal prosecution for violations of the provisions of the Pennsylvania Abortion Control Act which we have found unconstitutional could deter the performance of abortions by hospitals and physicians and cause irreparable injuries to members of the Plaintiff class. Consequently, injunctive relief will be granted.

An appropriate order will issue.

ADAMS, Circuit Judge (concurring and dissenting):

I concur in the results reached by the court in holding unconstitutional: (a) the definition of viability in section 2; (b) section 3(b)(i) (spousal consent); (c) sections 5(a) and 6(b) incorporating the unconstitutionally defined term, "viability"; and (d) those portions of section 6(d) that require record-keeping

---

6. Section 6(d) reads as follows: "(d) Every facility in which an abortion is performed pursuant to this act within the Commonwealth of Pennsylvania shall currently make and keep on file upon forms prescribed by the Department of Health a verified statement signed by the person who performed the abortion setting forth the following information with respect to such abortion: the name, address and age of the woman upon whom the abortion was performed; the date · on which the abortion was performed; the date upon which the determination of pregnancy as required by this section was made; the name and address, if known, of the spouse of the woman; the name and address, if known, of the parent or person in loco parentis if the woman is under eighteen years of age and unmarried; the approximate age, in months, of the fetus; a full statement of those facts upon which the person performing the abortion relied as establishing that the abortion was necessary to preserve the life or health of the mother. Affixed to such statement shall be a copy of each of the documents showing consent to abortion as required by section 3 of this act. All information and documents required by this subsection shall be treated with confidentiality customarily accorded to medical records."

with respect to the woman's spouse and the reasons making the abortion necessary in order to protect the life or health of the mother.[1] I must dissent, however, insofar as I would uphold the constitutionality of section 3(b)(ii), requiring the consent of a parent or one in *loco parentis*, and the remaining portions of section 6(d).[2] My views on these subjects and the reasons for finding unconstitutional the Act's definition of "viability" are set forth in my concurring and dissenting opinion in *Planned Parenthood v. Fitzpatrick*, Civil No. 2440, 401 F.Supp. 554 (E.D.Pa., September 4, 1975).[3]

1. The majority has held that section 6(d) of the Act is unconstitutional in its entirety. I would hold section 6(d) invalid only to the extent that it requires information concerning "the name and address, if known, of the spouse of the woman," and "a full statement of those facts which the person performing the abortion relied upon as establishing that the abortion was necessary to preserve the life or health of the mother." Since the spousal consent requirement of section 3(b)(i) is unconstitutional, the provision requiring the name and address of the spouse serves no essential purpose and could "chill" the rights of a woman seeking an abortion. The provision requiring a statement of the facts establishing the necessity of the abortion from the standpoint of the "life or health of the mother" is defective because it relates directly to a determination of viability under section 6(b), which has been held unconstitutional both in *Planned Parenthood v. Fitzpatrick*, Civil No. 2440, 401 F.Supp. 554 (E.D.Pa. September 4, 1975), and by the Court here.

2. I would uphold section 6(d) of the Act to the extent that it requires information concerning "the name, address and age of the woman upon whom the abortion was performed; the date on which the abortion was performed; the date on which the determination of pregnancy as required by this section was made; . . . the approximate age, in months, of the fetus; . . . the name and address, if known, of the parent or person in *loco parentis* if the woman is under eighteen years of age and unmarried." I would also uphold section 6(d) to the extent that it requires "a copy of each of the documents showing consent to the abortion as required by section 3 of this act" (insofar as those consent requirements are valid), and to the extent that it provides that "[a]ll information and documents required by this subsection shall be treated with confidentiality customarily accorded to medical records."

3. The recent order of the Supreme Court in *Connecticut v. Menillo*, 423 U.S. 9, 96 S.Ct. 170, 46 L.Ed.2d 152 (1975) (*per curiam*), is noted. There the Supreme Court reversed the holding of the state supreme court that the Connecticut abortion statute, similar to the Texas statute that was struck down in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), could not support the conviction of a non-physician for attempting to procure an abortion. Observing that *Roe v. Wade* recognized only a right to an abortion "performed by a competent, licensed physician, under safe, clinical conditions," *id.* at 120, 93 S.Ct. at 710, the Supreme Court stated:

> *Roe* teaches that a state cannot restrict a decision by a woman, with the advice of her physician, to terminate her pregnancy during the first trimester because neither its interest in maternal health nor its interest in the potential life of the fetus is sufficiently great at that stage.

Literal reading of the Supreme Court's phraseology might lead to the conclusion that any restriction by the state of a woman's right to an abortion during the first trimester—including the condition that a minor obtain, prior to abortion, the consent of a parent or one in *loco parentis*—is unconstitutional. However, I am not persuaded by such an interpretation. This is so because the Supreme Court in *Menillo* was addressing an issue far removed from that under consideration here. The question in *Menillo* was simply the constitutionality, under *Roe*, of state statutes that penalize the procurement or administration of an abortion by a non-physician.