**Dr. Walter WOLFE and Dr. Phillip S. Crossen, on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,**

v.

**Edwin A. SCHROERING, Jr., Commonwealth Attorney for the 30th Judicial District of Kentucky, Individually and as representative of the Commonwealth Attorneys for the 53 Judicial Districts of Kentucky,**

and

**Ed W. Hancock, Attorney General of Kentucky, Defendants-Appellants.**

No. 75–1318.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 16, 1975.

Decided Aug. 18, 1976.

**524**

Ed W. Hancock, Atty. Gen., Carl T. Miller, Jr., Edwin A. Schroering, Jr., Frankfort, Ky., for defendants-appellants.

James R. McCormick, Hubbell, Blakeslee, McCormick & Houlihan, Traverse City, Mich., for intervenor.

Robert Allen Sedler, Lexington, Ky., Judith Mears, Yale Legal Services Organization, Yale Law School, New Haven, Conn., Herbert L. Segal (Ky. Nurses Assn.), Louisville, Ky., for plaintiffs-appellees.

Before PECK, McCREE and MILLER,* Circuit Judges.

JOHN W. PECK, Circuit Judge.

Named plaintiffs-appellees, Kentucky board-certified obstetrician-gynecologists regularly performing abortions, filed on May 20, 1974, the instant purported class action against a named commonwealth attorney and the commonwealth attorney general, challenging the constitutionality of the March 29, 1974, Kentucky abortion statute, Ky.Rev.Stat. 311.710 et seq., 436.023 (1975). A three-judge court having been designated, depositions having been filed, and oral arguments having been heard, the three-judge court on November 19, 1974, sustained, in part, and invalidated, in part, the statute. The court sustained reporting and data-keeping requirements, the limiting of permissible abortions of "viable" fetuses to life- or health-saving abortions, and the ban on experimentation on aborted fetuses. The court, however, invalidated statutory requirements of the physician explaining "reasonably possible physical or mental consequences of the abortion" to a woman seeking a later than first trimester abortion, of written consent for abortion, of the husband's or parent's (if the woman is unmarried and less than eighteen years old) consent for a later than first trimester abortion, and of a 24-hour waiting period between such consent and the abortion; the district court also invalidated a statutory ban of the saline method for post-first trimester abortions and the "institutional conscience clause" (providing that no hospital shall be required to, or liable for refusal to, perform abortions). *Wolfe v. Schroering,* 388 F.Supp. 631 (W.D.Ky.1974).

Because defendants presumably would "give full credence to this decision," the district court refrained from granting injunctive relief. Consequently, defendants appealed to this court, rather than to the Supreme Court. See *Gerstein v. Coe,* 417 U.S. 279, 94 S.Ct. 2246, 41 L.Ed.2d 68 (1974). Plaintiffs, defendants, defendant-intervenor physicians, and two amici curiae nurses'

---

* Honorable William E. Miller did not participate in this decision prior to his death on April 12, 1976.

associations submitting briefs, and having heard oral argument, this court stayed deciding the appeal on October 31, 1975, pending the Supreme Court decision in *Planned Parenthood v. Danforth,* 392 F.Supp. 1362 (E.D. Mo.1975). The Supreme Court having decided *Danforth* on July 1, 1976, —— U.S. ——, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976), we proceed to decide the appeal in light of *Danforth, Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

### Written, Spousal, and Parental Consent

■ Preliminarily, defendants claim that the named plaintiffs, "board-certified obstetrician–gynecologists, . . . in their practice . . . perform[ing], on a regular and recurring basis, medical abortions," lack standing to challenge the written, spousal and parental consent requirements. But Ky.Rev.Stat. 311.990(13) "directly operates" on physicians failing to obtain statutorily-required consent by authorizing imprisonment "in the county jail not to exceed one (1) year or a fine not to exceed one thousand dollars ($1,000), or both." E.g., *Danforth, supra,* —— U.S. at ——, 96 S.Ct. at 2837–2838, 49 L.Ed.2d at 800–801, *Doe, supra,* 410 U.S. at 188–189, 93 S.Ct. at 745–746, 35 L.Ed.2d at 210; *Planned Parenthood v. Fitzpatrick,* 401 F.Supp. 554, 561–562 (E.D.Pa.1975) (three-judge court). See *Roe v. Ferguson,* 515 F.2d 279, 281 (6th Cir. 1975).

■ The section 311.740(1) requirement for the woman's written consent for abortions [1] including first trimester abortions is facially [2] constitutional, whether or not Kentucky law requires prior written consent for any other surgical procedure.[3] *Danforth, supra,* —— U.S. at ——, 96 S.Ct.

at 2839–2840, 49 L.Ed.2d at 803. See *Fitzpatrick, supra,* 401 F.Supp. at 582, 587–588.

Sections 311.740(2) and 311.740(3) require alternatively spousal and parental consent for abortions "[a]fter the first trimester." *Danforth, supra,* invalidated similar third party consent requirements for abortions "during the first 12 weeks." 808 U.S. at ——, 96 S.Ct. at 2840–2844, 49 L.Ed.2d 804–808.

■ We hold that Ky.Rev.Stat. 311.-740(2) and 311.740(3) unconstitutionally interfere with the woman's right to a second trimester abortion. *Roe, supra,* 410 U.S. at 163–165, 93 S.Ct. 731–733, 35 L.Ed.2d at 182–83, permits states to regulate second trimester abortions only "to preserve and protect maternal health." *Danforth,* —— U.S. at ——, 96 S.Ct. at 2837, 49 L.Ed.2d at 800. Thus, the state cannot constitutionally authorize spouses, parents, or guardians to "veto," for no reason or an impermissible reason, *to wit,* other than "protect[ing] maternal health," such as protecting an unrecognized interest in fetal life. Yet the statute attempts to confer such far-reaching "veto" powers on such third persons.

Nor could the state authorize such third persons to "veto" second trimester abortions to "protect maternal health," because the maternal health interest is sufficiently protected by the participation of the woman and physician, the husband has no overriding interest apart from the woman in maternal health, and there can be no assurance that the "veto" of the parents or guardian, purportedly to protect maternal health, is not designed to protect the unrecognizable interest in fetal life. See *Doe v. Zimmerman,* 405 F.Supp. 534, 537 (M.D.Pa.1975) (three-judge court); *Coe v. Gerstein,* 376

---

1. Ky.Rev.Stat. 311.740(1) requires the woman's "consent," which section 311.720(3) defines as "an informed consent expressed by a written agreement to submit to an abortion on a written form of consent to be promulgated by the State Board of Health."

2. We recognize that the State Board of Health-promulgated form conceivably could be so misleading or threatening as to unconstitutionally

interfere with the woman's right to be an abortion. Cf. *Planned Parenthood v. Fitzpatrick,* 401 F.Supp. 554, 582 (E.D.Pa.1975) (three-judge court).

3. Defendants have cited no statute or case requiring *written* consent for other medical procedures. Nor have we found such statute or case.

F.Supp. 695, 697–699 (S.D.Fla.1973) (three-judge court), *aff'd sub nom., Poe v. Gerstein,* 517 F.2d 787 (5th Cir. 1975).

We refrain from deciding whether a more narrowly drafted requirement of spousal consent, permitting the husband-father to "veto" a post-viability abortion not necessary "for the preservation of the life or health of the mother," would pass constitutional muster in light of the recognizable post-viability interest in fetal life.[4] *Danforth,* —— U.S. at ——, 96 S.Ct. at 2837, 49 L.Ed.2d at 800. See *Zimmerman, supra,* 405 F.Supp. at 537; *Gerstein, supra,* 376 F.Supp. at 697–699, *aff'd* 517 F.2d at 794–797. See also *Fitzpatrick, supra,* 401 F.Supp. at 566; Note, Abortion: The Father's Rights, 42 U.Cin.L.Rev. 441 (1973).

## Duty To Inform

■ The district court invalidated Ky.Rev.Stat. 311.730 which would require physicians "before the performance of [a post first-trimester] abortion [to] inform the expectant mother of the reasonably possible physical and mental consequences of the performance of the abortion or the nonperformance of the abortion." The district court reasoned that section 311.730 "clearly" violated *Roe* because during the second trimester "the state must confine its regulation to the protection of maternal health and apply it only to the abortion procedure." Plaintiffs' appellate brief contends that section 311.730 is invalid as an impermissible "extra layer of regulation . . appl[ying] only to abortions and not to other indistinguishable medical procedures." Even were plaintiffs factually correct,[5] that in itself would not invalidate the information requirement. See *Danforth, supra,* —— U.S. at ——, 96 S.Ct. at 2839–2840, 49 L.Ed.2d at 803–804. Rather, section 311.730 insures that the "important" and "often

stressful" abortion decision "be made with full knowledge of its nature and consequences;" the Supreme Court has recognized that such full knowledge is "desirable and imperative." *Id.* See *Fitzpatrick, supra,* 401 F.Supp. at 583, 587–588.

## Waiting Period

■ Nor do we view the Ky.Rev.Stat. 436.023 24–hour waiting period requirement between the woman's consent and the abortion as being unconstitutional. The district court invalidated the waiting period requirement because "it attempts to regulate the abortion procedure during the first trimester, during which time the state has no compelling interest and thus can pass no regulation affecting this period." *Danforth, supra,* —— U.S. at ——, 96 S.Ct. at 2839–2840, 49 L.Ed.2d at 803–804, rejected similar reasoning. Given the imprecision of the trimesters and "viability," a delay of 24 hours could not result in a transition from the first into second trimester, or from the second trimester into "viability." See *Rodos v. Michaelson,* 396 F.Supp. 768, 771, 772 (D.R.I.), *rev'd on other grounds,* 527 F.2d 582 (1st Cir. 1975). Nor do plaintiffs claim that the 24-hour waiting period significantly burdens the abortion process. Moreover, section 436.023 contains an exemption for abortions where "an emergency situation presents imminent peril substantially endangering the life of the woman."

## Saline Method

■ We sustain the district court's invalidation of the Ky.Rev.Stat. 311.770 prohibition of "saline method" abortions "[a]fter the first trimester," on the basis of *Danforth, supra,* —— U.S. at ——, 96 S.Ct. at 2844–2845, 49 L.Ed.2d at 808–810, which invalidated a virtually identical Missouri prohibition. As in *Danforth,* the instant record reflects that the saline method, at the en-

4. Such a requirement presently would be redundant in Kentucky because the Commonwealth through Ky.Rev.Stat. 311.780 "vetoes" post-viability abortions not "necessary to preserve the' life or health of the woman."

5. Because "the physician is learned, skilled, and experienced in the afflictions of the body

about which the patient ordinarily knows little or nothing," Kentucky has long required the physician "to speak fairly and truthfully at the peril of being held liable for damages for fraud and deceit." *Adams v. Ison,* Ky., 249 S.W.2d 791 (1952).

actment of the statutory prohibition, was the only available method in Kentucky, thus making its prohibition "almost tantamount" to a prohibition of post-first trimester abortions. See Stevens, J., concurring in part in *Danforth, supra,* —— U.S. at ——, 96 S.Ct. at 2856, 49 L.Ed.2d at 823. Rather than challenging the district court finding that prostaglandin was unavailable, 388 F.Supp. at 637, appellants merely contend that the ban of saline methods would hasten the development of the alternative prostaglandin method in Kentucky.

### Conscience Clause

■ The district court invalidated the Ky.Rev.Stat. 311.800 "institutional" conscience clause, in connection with the section 311.760(2) requirement that post-first trimester abortions be performed in hospitals or clinics, at least as applied to public hospitals. Though the appellate briefs confess "confusion" concerning the extent of the district court's invalidation of section 311.800 plaintiffs candidly admit that, in their opinion, "[t]he court did not invalidate the individual conscience clause, which was not challenged, nor did it hold that purely private hospitals were constitutionally required to perform abortions." We are of the view that the conscience clause may constitutionally permit "private" hospitals and health care facilities and physicians, nurses and employees to refuse to perform or participate in performing abortions for "ethical . . ., moral, religious or professional reasons." See *Bolton, supra,* 410 U.S. at 197–198, 93 S.Ct. at 750, 35 L.Ed.2d at 215–216; *Doe v. Poelker,* 515 F.2d 541, 546 (8th Cir. 1975), *cert. granted,* —— U.S. ——, 96 S.Ct. 3220, 49 L.Ed.2d 1216 (July 6, 1976); *Greco v. Orange Mem. Hosp. Corp.,* 513 F.2d 873 (5th Cir.), *cert. denied,* 423

U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975); *Doe v. Hale Hosp.,* 500 F.2d 144, 147 (1st Cir. 1974), *cert. denied,* 420 U.S. 907, 95 S.Ct. 825, 42 L.Ed.2d 837 (1975); *Doe v. Bellin Mem. Hosp.,* 479 F.2d 756 (7th Cir. 1973); *Doe v. Mundy,* 378 F.Supp. 731, 736–737 (E.D.Wis.1974). But see *Doe v. Charleston Area Medical Center, Inc.,* 529 F.2d 638 (4th Cir. 1975).

However, the conscience clause cannot constitutionally permit "public" hospitals ("state actors"), to refuse to permit the performance of abortions for "ethical" reasons.[6] Such permission would circumvent, if not directly contravene, *Roe, supra,* 410 U.S. at 164–165, 93 S.Ct. at 732, 35 L.Ed.2d at 183, which permits the state to interfere with the woman's abortion decision only in the second trimester, and then only to protect maternal health, and in the post-viability stage, to protect maternal health and fetal life. The conscience clause, as applied to public hospitals, unconstitutionally interferes with the woman's constitutional right to abortion by permitting public hospitals to proscribe first trimester abortions and to proscribe second trimester abortions on grounds broader than "maternal health." *Roe v. Arizona Bd. of Regents,* 23 Ariz.App. 477, 534 P.2d 285 (1975); see *Poelker, supra; Doe v. Hale Hosp., supra; Nyberg v. City of Virginia,* 495 F.2d 1342 (8th Cir.), *appeal dismissed,* 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136 (1974); *Orr v. Koefoot,* 377 F.Supp. 673 (D.Neb.1974). See also *Hathaway v. Worcester City Hosp.,* 475 F.2d 701 (1st Cir. 1973).

We agree with *Hathaway, supra,* and *Nyberg, supra,* that certain *Bolton* language cannot shield the "institutional conscience clause," as applied to public hospitals, from constitutional challenge. Admittedly, *Bolton* favorably cited a facially unlimited

---

**6.** We express no opinion as to under what circumstances, if any, a public hospital may refuse to perform abortions for non-ethical reasons, such as lack of personnel or facilities or of specialization in non-obstetrical and non-surgical fields. See, e. g., *Nyberg v. City of Virginia,* 495 F.2d 1342, 1346 (8th Cir.), *appeal dismissed,* 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136 (1974); *Orr v. Koefoot,* 377 F.Supp. 673, 679 n. 6 (D.Neb.1974); *Roe v. Arizona Bd. of*

*Regents,* 23 Ariz.App. 477, 534 P.2d 285, 291 (1975). But see *Doe v. Hale Hosp.,* 500 F.2d 144, 146–147 (1st Cir. 1974), *cert. denied,* 420 U.S. 907, 95 S.Ct. 825, 42 L.Ed.2d 837 (1975). In other words, we do not require all public hospitals to perform abortions; we simply hold that the state cannot constitutionally authorize public hospitals to refuse to perform abortions for "ethical" reasons.

**528**

Georgia "institutional conscience clause," but the Court quickly noted that the clause was "obviously" designed "to afford appropriate protection to the individual and to the denominational hospital." 410 U.S. at 197–198, 93 S.Ct. at 750, 35 L.Ed.2d at 216. *Hathaway* noted that the reference to the Georgia clause "cannot, of course, be taken as approving a similar ban in a state or state-supported hospital, . . . subject to the First and Fourteenth Amendments . . . ." 475 F.2d at 706 n. 4. Accord, *Nyberg, supra,* 495 F.2d at 1346–1347.

A more narrowly drafted "conscience" clause, however, would presumably be constitutional if limited to permitting public hospitals to refuse to allow post-viability abortions for the "ethical . . . interest in the potentiality of human life . . . except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." [7]

We thus sustain the invalidation of the conscience clause as applied to public hospitals, and construe the district court opinion as not invalidating the conscience clause as applied to private hospitals, health facilities, physicians, nurses, and employees. If the district court opinion were construed as invalidating the conscience clause as applied to those entities and persons, it could not be sustained.

The district court judgment invalidating Ky.Rev.Stat. 311.740(2), 311.740(3), 311.770 and 311.800 (as applied to public hospitals) is affirmed. The district court judgment invalidating Ky.Rev.Stat. 311.730, 311.-740(1), and 436.023 is reversed.

Affirmed in part, reversed in part.

---

**7.** Such more narrowly drafted conscience clause, however, would be unnecessary in light of the Ky.Rev.Stat. 311.780 criminal proscription of post-viability abortions "not necessary to preserve the life or health of the woman." See footnote 4, *supra.*