STATE v. CALHOUN COUNTY, by J. E. YON, J. R. MAYO, J. Z. TINDEL, C. T. SUGGS and JOSEPH TUCKER, as members of and constituting the Board of County Commissioners of said County.

170 So. 883.
En Banc.
Opinion Filed December 2, 1936.

*John H. Carter, Jr.,* State Attorney, for Appellant;
*John D. Trammell* and *Marion B. Knight,* for Appellee.

ELLIS, P. J.—The Legislature of Florida in 1933 enacted Chapter 16344. That Act became a law without the approval of the Governor. It authorized the County of Calhoun to construct a bridge across the Apalachicola River opposite Blountstown between Calhoun County and Liberty County and to own and construct approaches thereto and to own and operate the bridge as a toll bridge according to maximum rates prescribed by the statute subject to a reduction of the same by the County as it may seem expedient.

The Act authorized the County to borrow money with which to construct the bridge and the approaches thereto and to sell bridge or revenue bonds as evidence of such indebtedness and payable solely from the income derived from the bridge and that such bonds should be a first and exclusive lien upon the bridge and approaches and the income thereof. The Act also provided that the lien created by such indebtedness might be foreclosed from default in the payment of principal and interest. As an optional remedy, the Act provided that a contract might be made with Calhoun County to take over the bridge in lieu of the foreclosure and in satisfaction of the lien by the turn over of bridge and approaches to the bondholders provided that such bonds are held and owned by one person, one corporation or otherwise held intact as a whole. The Act also provided that there should be no general obligation upon Calhoun County for the construction of the bridge and approaches and no lien upon the real and personal property in Calhoun County.

Section 2 of the Act provides: "The Board of County Commissioners of said County shall have the power to do each and every act necessary in connection with the issuance and sale of such bonds, and no election shall be held in connection with the issuance of such bonds."

The Act provided for the employment by the County of an attorney and engineers in connection with such bridge matters. It was provided in the Act that permission should be obtained from the United States Government to build the bridge across the river; that the bridge should be operated as a self-liquidating project until such time as it may be taken over by some State or governmental agency to be operated as a free bridge.

In 1931 the Legislature enacted Chapter 14715 prescribing the manner by which elections may be called and held for the approval of the issuance of bonds by counties and other agencies of the State of Florida in compliance with Section 6, Article IX, of the Constitution of the State of Florida as amended and to regulate the holding of elections and to declare the result thereof.

In July, 1936, the County Commissioners in Calhoun County, acting under authority of Chapter 16344, *supra,* prepared by resolution to issue bonds in order to raise money for the construction of the bridge and in due course application was made to the Circuit Court for Calhoun County for the validation of such bonds under the provisions of the statutes applicable thereto. No election was called under the provisions of Amended Section 6, Article IX, of the Constitution for the approval of the issuance of such bonds by the registered voters of Calhoun County who were freeholders.

The Judge of the Circuit Court, upon such application, by a decree duly entered, validated the issuance of the proposed bonds under the resolution of July, 1936. From that decree an appeal was taken to this Court and it was held that the proposed issue under such resolution was invalid because "the issue of 'bridge bonds' or 'revenue bonds' in the name of the county and (2) the provision of the statute

making such bonds a lien upon property acquired by the county in constructing the bridge and its approaches and providing for the foreclosure of such liens by subjecting the bridge and approaches to sale under foreclosure decree, would violate Amended Section 6, Article IX, of the State Constitution, unless the issue of the bonds" should be "approved by a vote of the freeholder electors of the county." See State v. Calhoun County, 125 Fla. 263, 169 Sou. Rep. 673."

The opinion in that case further stated: "The statute gives a lien on the bridge and approaches," and that provision "violates Amended Section 6, Article IX, of the Constitution, unless the proposed bond issue is approved by the freeholder electors of the county."

In support of that proposition the Court cited several decisions of this Court, among which were Kathleen Citrus Land Co. v. City of Lakeland, 124 Fla. 659, 169 South. Rep 356, in which it was said that the decision of the Court in the case of State v. City of Miami, 113 Fla. 280, 152 South. Rep. 6, marked the limit of this Court's sanction under Section 6 of Article IX, as amended, of the Constituion, of efforts on the part of taxing agencies to exceed the limit of their borrowing capacity by circuitous and evasive methods of complex finance scheming supported by subtleties, and refinements of reasoning to show that no debt or liability is imposed upon the taxing agency by such methods of borrowing.

Following the decision of this Court in the case of State v. Calhoun County, *supra,* decided September 10, 1936, the Board of County Commissioners of Calhoun County on September 24, 1936, rescinded the former resolution of July 15, 1936, relating to the issuance of Apalachicola River Bridge Bonds and by resolution provided for the issuance

of such bonds after submitting the proposition to the qualified freeholder electors of Calhoun County under the provisions of Chapter 14715, *supra.*

Following the election, which was duly held under the provisions of the statute to which reference is made, the Board of County Commissioners filed in the Circuit Court for Calhoun County an application for the validation of the bonds to be issued under the latter resolution and the election held under the statute pursuant to the terms of such resolution.

The allegations of the petition show that all the requirements of the statute applicable to such elections were complied with. The State attorney in behalf of the State answered such petition and in a full and comprehensive pleading contested the validation of the bonds. Among other questions raised by such answer the State attorney urged that the resolution of the County Commissioners providing for an election to validate the bonds was insufficient to meet the requirements of Amended Section 6 of Article IX of the Constitution and Chapter 14715, Acts 1931, in that the resolution did not direct the manner of publication of the notice of election and that the resolution did not set forth the form of notice of election to be published and that the form of ballot to be used in the election was not set forth in the resolution.

It was also urged in the answer that Section 2 of Chapter 16344, *supra,* providing that "no election shall be held in connection with the issuance of such bonds" invalidates the entire Act as the Act contains no separability clause, and therefore the clause is not separable from the other provisions of the Act.

The Court by decree found as a matter of fact that the County Commissioners had complied with all the require-

ments of Chapter 14715, Acts of 1931, *supra,* in all preliminary matters as to resolution, notice of election, holding of the election, the number of freeholder electors participating and the number voting affirmatively for the issuance of the bonds and all other requirements pertaining to an election under the provisions of Amended Section 6 of Article IX of the Constitution, *supra,* and by decree duly entered, validated and confirmed the bonds described in the petition.

The Court found that the total number of freeholders who were qualified electors residing in Calhoun County at the time of the election was 685, and the number of those who particpiated in such election was 603, of which number of voters 529 voted for the issuing of the bonds and 11 voted against the issuance thereof.

The only question presented here is whether the above quoted Section 2 of Chapter 16344, *supra,* providing that "no election shall be held in connection with the issuance of such bonds" may be separated from the provisions of that Act and the remaining portions thereof left as a valid expression of the legislative will in relation to the construction of the Calhoun County Bridge.

The Act definitely provides that "no election shall be held in connection with the issuance of the bonds. That the invalid clause of the Act was intended by the Legislature to authorize the incurring of an indebtedness by the County for the purpose stated without the approval of such indebtedness by the freeholder electors of the County as provided for under Amended Section 6 of Article IX of the Constitution cannot reasonably be stated to have been the legislative purpose.

It is apparent from the language of the entire Act that the sole and dominating purpose of it was to provide for

the construction of a bridge by Calhoun County across the Apalachicola River to Liberty County and to acquire the approaches necessary therefor in order to meet what the Legislature by such Act evidently deemed to be an important if not necessary link in the system of highways by which communication between the two counties of Calhoun and Liberty and other sections of the State may be facilitated. It was deemed that such facilities for communication were necessary to meet future if not immediate demands for convenience of intercourse between the people of that section of the State and all other persons using the public highways.

It is not conceivable that, such being the dominating thought of the Legislature in the enactment of the statute, it would purposely defeat that object by the insertion of a clause prohibiting the operation of Amended Section 6 of Article IX of the Constitution, which was adopted by the people as a safeguard against improvident expenditures of public funds and the exercise of the sovereign power of taxation.

As pointed out in the case of State v. Calhoun County, *supra,* it was the provisions in the Act which contemplated the creation of a lien upon property acquired by the County and subjecting it to sale under foreclosure to satisfy the debt incurred in the construction of the bridge that rendered such power amenable to the provisions of Amended Section 6 of Article IX of the Constitution.

It thus appears that the language of the Act contained contradictory clauses, viz.: One, which provided for the existence of a lien upon property acquired by the County and the sale of such property under foreclosure, which made it amenable to the provisions of Amended Section 6 of Article IX of the Constitution, and another provision, that

contained in Section 2, which undertook to inhibit the application of the provisions of the said section and article of the Constitution.

It is a well established principle of statutory construction that the language of a statute should be so construed as to preserve its constitutionality rather than defeat it and that if two apparently contradictory provisions exist in a statute, one being consistent with the limitations of the Constitution and another in violation of them, the latter should not control to strike down the statute; in other words, if a clause in the statute which is violative of the Constitution may be eliminated and the remaining portion of the Act stand as a valid expression of the legislative will the clause violative of constitutional limitations will be eliminated and the Act permitted to stand although there is no separability clause in the Act.   See *In re* Seven Barrels of Wine, 79 Fla. 1, 83 South. Rep. 627; Langford v. Odom, 77 Fla. 282, 81 South. Rep. 469; State v. Brown, 19 Fla. 563; Boynton v. State, 103 Fla. 1113, 138 South. Rep. 639; South Fla. Trust Co. v. Miami Coliseum Corp., 101 Fla. 1351, 133 South. Rep. 334; Haile v. Gardner, 82 Fla. 355, 91 South. Rep. 376; Sams v. Morris, 88 Fla. 162, 101 South. Rep. 206; Gwynn v. Hardee, 92 Fla. 543, 110 South. Rep. 343; State v. Simpson, 122 Fla. 582, 166 South. Rep. 227; State v. Lee, 122 Fla. 629, 166 South. Rep. 249; State v. A. C. L. R. Co., 56 Fla. 617, 47 South. Rep. 969.

It is contended by counsel for appellant that as the Act contains no legislative declaration to the effect that if any portion of the Act should be declared unconstitutional the remaining portion shall be operative the omission of such clause indicates a legislative purpose to vest the power to issue the bonds to raise the money for the construction of

the bridge in the Board of County Commissioners without an approving vote by the freeholder electors of the County.

The case of Louis K. Liggett Co. v. Lee, 109 Fla. 477, 149 South. Rep. 8, is cited to support that doctrine. The language of the opinion in that case merely announces the general doctrine: "If the objectionable part of the Act can be severed in such a way that the Legislature would be presumed to have enacted the valid portion without the invalid part, the failure of the latter will not render the entire statute invalid." A number of cases were cited to support that doctrine, among which was *Ex Parte* Smith, 100 Fla. 1, 128 South. Rep. 864, which involved the validity of a municipal ordinance which appears to have contained no separability clause. The ordinance was held invalid, however, on the theory that the objectionable clause was an integral part of the ordinance and could not be separated from it without doing violence to the intention of the Council.

It cannot be said in this case, however, that the purpose of the Legislature to authorize the issuing of bonds without a vote of the freeholders was such a necessary part or integral portion of the legislative concept in authorizing the construction of the bridge that its elimination would destroy the legislative will. This is true because another portion of the Act, hereinbefore referred to, providing that the bonds should be a lien on the bridge and that such lien may be foreclosed and the property sold to satisfy the lien necessarily brought the legislative Act under the influence of Amended Section 6 of Article IX of the Constitution and was heretofore held by this Court in the decision referred to involving the first issue of bonds for the construction of this bridge.

The authority of the Court to eliminate from an Act of

the Legislature an invalid clause does not flow from legislative authority authorizing the Court to do so, but from the inherent power of the Court to preserve the constitutionality of the Act if it is possible to do so even by the elimination of invalid clauses where it appears that the elimination of such clauses would not destroy the main and essential features of the Act and the portion left is a completed and workable statute and where it cannot be said that the Legislature would not have enacted the remaining portions of the Act without the invalid clause which is stricken.

The case of Ramsey v. Martin, 111 Fla. 798, 150 South. Rep. 256, is not in conflict with this doctrine.

The decree of the Circuit Court is affirmed.

Affirmed.

WHITFIELD, C. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.