**John JONES, M.D., on his own behalf and on behalf of all others similarly situated, Plaintiff,**

v.

**James C. SMITH, Attorney General of Florida and Michael J. Satz, State Attorney Seventeenth Judicial Circuit, Florida, Defendants.**

No. 79–6403–CIV–SMA.

United States District Court,
S. D. Florida.

July 13, 1979.

Mary Ellen Shoemaker, Fort Lauderdale, Fla., Joel V. Lumer, Coral Gables, Fla., co-counsel, for plaintiff.

Martin S. Friedman, Asst. Atty. Gen., Dept. of Legal Affairs, Civ. Div., Tallahassee, Fla., for defendants.

### MEMORANDUM OPINION and INJUNCTIVE ORDER

ARONOVITZ, District Judge.

In June, 1979, the Florida Legislature enacted a Medical Practices Act, ("the Act"), Chapter 458, Florida Statutes which contains a section regulating the termination of pregnancies in Florida (Section 458.-505 Florida Statutes). The bill was signed by the Governor on June 29, 1979 and became law on July 1. Clause (9) of Section 458.505 makes it a criminal offense to perform or participate in pregnancy terminations in violation of the requirements set forth in the Act.

Plaintiff, a medical doctor, filed this class action complaint against James C. Smith, Attorney General of Florida and Michael J. Satz, State Attorney for the Seventeenth Judicial Circuit of Florida, on July 5, 1979 seeking a Declaratory Judgment that Section 458.505 of the Florida Statutes is unconstitutional on its face and preliminary and permanent injunctions enjoining the Defendants from prosecuting the Plaintiff or members of his class for any alleged violation of this section.

Specifically, Plaintiff challenges the constitutionality of (1) clause (4)(a) of Section 458.505,[1] which regulates abortions of unmarried pregnant women under 18 years of age, and (2) clause (4)(b)[2] which regulates abortions of married women. Under the Act, an unmarried minor who desires an abortion must provide her physician with either the written informed consent of a parent, custodian, or legal guardian *or* an order from the Circuit Court. A married

---

1. For the full text of this subsection, see p. 1164, *infra.*

2. For the full text of this subsection, see p. 1167, *infra.*

woman who desires an abortion must give notice of the proposed abortion to her husband (the notice requirement does not apply if the husband and wife are "separated or estranged") and allow him the opportunity to consult with her concerning the procedure. The wife must provide the physician with either her written statement that such notice and opportunity have been given or with the written consent of the husband.

Plaintiff alleges that Section 458.505 of the Act violates the Fourteenth Amendment and is unconstitutional on its face because it places an undue burden upon the fundamental right of women to terminate their pregnancies during the first trimester. Plaintiff alleges further that the specific provisions that apply to minor unmarried women and all married women impose unconstitutional burdens on the fundamental right to privacy of Plaintiff and his class. Finally, Plaintiff alleges that the statute violates the Equal Protection Clause by creating two classifications of women under eighteen (unmarried and married) and two classifications of women over the age of eighteen (married and unmarried), classifications that result in dissimilar treatment of the classes unsupported by any compelling governmental interest.

On July 6, 1979, Plaintiff filed a Motion for Preliminary Injunction, requesting an expedited hearing. Accordingly, the matter came on for hearing before this Court on July 10, 1979, for the presentation of evidence and argument directed to Plaintiff's request for preliminary injunctive relief. At the hearing, the Court heard testimony of witnesses for the Plaintiff and heard argument by counsel for both sides. Defendants offered no testimony. Thereafter, upon the Court's request, the parties submitted post-hearing briefs directed toward the issues raised in Plaintiff's Complaint and Motion for Preliminary Injunction. The Court has carefully reviewed and considered the entire record, including the evidence and argument presented at the hearing and the post-hearing briefs and concludes that a preliminary injunction should issue for that portion of relief sought herein relating to unmarried pregnant minor females under eighteen (18) years of age, but should be denied as to relief sought for the pregnant married women.

## STANDING AND CLASS ACTION CERTIFICATION

Plaintiff, John Jones, M.D., is an obstetrician and gynecologist who has been practicing medicine since 1973. As alleged in the Complaint and restated in Plaintiff's testimony at the Preliminary Injunction hearing, Dr. Jones has been practicing medicine in Broward County since August, 1978. As part of his practice, Plaintiff performs abortions at Plantation General Hospital and at the SIGMA Reproductive Health Center in Broward County on both unmarried women under eighteen (18) and married women during their first trimester of pregnancy. According to his testimony, he has appointments to perform such abortions in the near future.

Plaintiff brought this suit as a class action and has moved the Court for an Order certifying the following classes:

(1) All unmarried, minor pregnant women desiring to terminate their pregnancies, and their physicians, and

(2) All married pregnant women desiring to terminate their pregnancies, and their physicians.

■ Argument was not advanced specifically upon Plaintiff's Motion to Certify a Class and the Defendant has not been afforded an opportunity to file a written response to this Motion. Nevertheless, the issue of standing was addressed by the parties at the hearing on preliminary injunction, and the Court finds that this action should be certified as a class action for the purpose of the preliminary injunction without prejudice to Defendants' rights to present subsequent argument to decertify the class should the Defendants deem it appropriate to address class certification further.

An action may be maintained as a class action if the four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are

satisfied and, in addition, the action meets the requirements of one of the subsections of Rule 23(b). Although only the issue of standing was raised at the hearing, it is apparent to this Court that this case fits the requirements of Rule 23.

First, it is beyond dispute that the class is so numerous that joinder of all members is impracticable. Rule 23(a)(1). Second, these are common questions of fact and law, for the constitutionality *vel non* of the statute will have a common impact on the patients and doctors comprising each of the above described subclasses. Rule 23(a)(2).

Whether the named Plaintiff presents claims that are typical of the class (Rule 23(a)(3)) and whether the representative party will fairly and adequately protect the interests of the class appear to present more complex questions since the Plaintiff, a doctor, purports to represent the interests of pregnant women. However, these questions have been considered fully by the Supreme Court in determining the existence and scope of physicians' standing in abortion cases. In *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) the Court concluded that the physician-appellants had standing to challenge the Georgia abortion statutes although none of them had been prosecuted or threatened with prosecution for violation of these laws. In *Singelton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), the Court expanded the representative rights of doctors, concluding that it is appropriate to allow a physician to assert the rights of women patients as against governmental interference with the abortion decision.[3] 428 U.S. at 118, 96 S.Ct. 2868. Therefore, this Court concludes that the named Plaintiff in this action, a doctor who performs abortions, has standing to represent both the class of unmarried pregnant women under 18 who desire abortions, together with their physicians, and the class of married, pregnant women who desire abortions, together with their physicians. The Court finds further that the claims raised by the named Plain-

tiff are typical of the class and that the doctor-patient relationship insures that the representative doctor will fairly and adequately protect the interests of the class. Whether or not the class representation would be expanded to include other representatives, upon petition, is a matter the Court would address if it arises.

Finally, it is clear that injunction relief with respect to the class is appropriate in that the Defendants have stipulated that they would enforce the challenged provisions of the abortion statute against members of the designated classes. Therefore, the case is properly maintainable as a Rule 23(b)(2) action.

## SUPREME COURT RULINGS ON ABORTION

In *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) the Supreme Court concluded that the right of privacy encompasses a woman's decision whether or not to terminate her pregnancy. 410 U.S. at 153, 93 S.Ct. 705. It rejected Plaintiffs' argument that the woman's right is absolute, concluding that the permissible scope of state regulation increased as the pregnancy progressed. However, for the first twelve weeks of pregnancy, (the period generally referred to as the first trimester), "the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician" without interference from the state. 410 U.S. at 164, 93 S.Ct. at 732.

In *Roe*, the Supreme Court did not find it necessary to decide the constitutionality of state statutory provisions requiring minors to obtain written consent from their parents or requiring married women to obtain written consent from their husbands. These issues were addressed squarely by the Court three years later in *Planned Parenthood v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). In *Danforth*, the Court held that a state may not constitutionally require the consent of the spouse of a married woman or parent of an unmar-

---

**3.** *See also Bellotti v. Baird,* —— U.S. ——, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979); *Planned Par-* *enthood v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976).

ried minor as a condition for abortion during the first twelve weeks of pregnancy. The Court found that these provisions delegated to the spouse or the parent a veto power which the state itself is absolutely and totally prohibited from exercising during the first trimester of pregnancy. 428 U.S. at 69, 74, 96 S.Ct. 2831.

The former Florida abortion statute, Section 458.22(3) Fla.Stats., which required written consent of the husband of a married woman and written consent of the parent of a minor unmarried woman was held to be unconstitutional in *Coe v. Gerstein*, 376 F.Supp. 695 (S.D.Fla.1973), affirmed in *Poe v. Gerstein*, 517 F.2d 787 (5th Cir. 1975). Based on the *Danforth* decision, the Supreme Court affirmed in a Memorandum Decision, 428 U.S. 901, 96 S.Ct. 3202, 49 L.Ed.2d 1205 (1976).

The Supreme Court's mandate in *Danforth* precluded states from vesting an absolute veto to a woman's first trimester abortion decision in any third party. However, the possibility of more limited restrictions, short of an absolute veto, remained an open question.

The Florida statute presently before the Court reflects a legislative attempt to impose restrictions on the abortion decision of married women and unmarried minor women, restrictions that on the face of the statute do not provide for an absolute third party veto. Whether the burdens imposed by the Florida Legislature are constitutionally permissible must now be considered.

### UNMARRIED MINOR WOMEN

Under Section 458.505 of the new Florida statute, an unmarried pregnant woman under eighteen who desires a pregnancy termination must provide her physician with either the written informed consent of a parent, custodian or legal guardian *or* provide him with an order of the Circuit Court. In its entirety, F.S.A. 458.505(4)(a) states:

> If the pregnant woman is under 18 years of age and unmarried, in addition to her written request, the physician shall obtain the written informed consent of a parent, custodian, or legal guardian of

such unmarried minor, or the physician may rely on an order of the Circuit Court, on petition of the pregnant unmarried minor or another person on her behalf, authorizing, for good cause shown, such termination of pregnancy without the written consent of her parent, custodian, or legal guardian. The cause may be based on a showing that the minor is sufficiently mature to give an informed consent to the procedure, or based on the fact that a parent unreasonably withheld consent by her parent, custodian, or legal guardian, or based on the minor's fear of physical or emotional abuse if her parent, custodian, or legal guardian were requested to consent, or based upon any other good cause shown. At its discretion the court may enter its order ex parte. The court shall determine the best interest of the minor and enter its order in accordance with such determination.

Plaintiff argues that these restrictions on an unmarried teenager's access to abortion unduly burden the right to an abortion and are therefore unconstitutional. Plaintiff relies heavily on the Supreme Court's most recent abortion decision in *Bellotti v. Baird*, ("*Bellotti II*"), —— U.S. ——, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) and indeed, this decision is determinative of the issues before this Court.

In *Bellotti II*, eight Justices found that a Massachusetts statute unconstitutionally restricted the rights of unmarried minors to secure abortions. The Court's July 2, 1979 opinion was the culmination of five years of litigation over the constitutionality of the Massachusetts statute and embodied the second decision of the Supreme Court in the case. In its first opinion, *Bellotti v. Baird*, 423 U.S. 982, 96 S.Ct. 390, 46 L.Ed.2d 301 (1975), the Court discussed in dicta the scope of permissible burdens that a State could impose but held that the lower court should have abstained since the statute was susceptible of an interpretation by the highest court of the state of Massachusetts that would avoid or substantially modify the federal constitutional challenge. 428 U.S. 132, at 151, 96 S.Ct. 2857, 49 L.Ed.2d 844.

Following the opinion of the Supreme Judicial Court of Massachusetts answering questions certified to it by the District Court, the District Court again declared the statute unconstitutional, 450 F.Supp. 997 (D.Mass.1978), and in *Bellotti II*, the Supreme Court affirmed.

In discussing the constitutional rights of minors, Justice Powell noted in the plurality opinion [4] in *Bellotti II* that although children, merely on account of their minority, are not beyond the protection of the Constitution, the constitutional rights of children cannot be equated with those of adults because of the peculiar vulnerability of children, their inability to make critical decisions in an informed, mature manner, and the importance of the parental role in child-rearing. —— U.S. at ——, 99 S.Ct. 3035. The Court had held in *Planned Parenthood v. Danforth, supra,* that a state could not lawfully authorize an absolute parental veto over the decision of a minor to terminate her pregnancy, but that decision was limited to statutes giving absolute control to parents:

> We emphasize that our holding . . . does not suggest that every minor, regardless of age or maturity, may give effective consent for termination of her pregnancy.

*Danforth, supra,* 428 U.S. at 75, 96 S.Ct. at 2844. Based on its holding in *Danforth* and in recognition of the state's interest in encouraging an unmarried pregnant minor to seek the advice of her parents in the abortion decision, the Court's analysis in *Bellotti II* focused on the parameters of constitutionally permissible regulation.

The plurality opinion described the scope of permissible state regulation on a minor's abortion decision. In their view, a state may constitutionally institute a procedure that alternatively provides for either parental consent *or* judicial authorization, *but* in the court proceeding, the minor must be entitled to show *either*:

> (1) that she is mature enough and well enough informed to make her abortion decision in consultation with her physi-

cian, independently of her parents' wishes; or

> (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests.

The proceeding in which this showing is made must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained. In sum, the procedure must ensure that the provision requiring parental consent does not in fact amount to the "absolute, and possibly arbitrary, veto" that was found impermissible in *Danforth.*

*Id.* at ——, 99 S.Ct. at 3048–3049.

Viewed against these requirements, the Massachusetts statute fell short of Constitutional standards in that it permitted the judge to withhold authorization for an abortion even if he found the girl sufficiently mature to make the decision independently. As interpreted by the highest court in Massachusetts, the statute in *Bellotti* provided that even if the judge finds that the minor is capable of making, and has made, an informed and reasonable decision to have an abortion, he is entitled to withhold consent in circumstances where he determines that the best interests of the minor will not be served by an abortion. *Bellotti II, supra,* —— U.S. at ——, 99 S.Ct. 3035. The Supreme Court rejected "best interests of the minor" as the proper test holding that

> [i]f she satisfies the court that she is mature and well-informed enough to make intelligently the abortion decision on her own, the court must authorize her to act without parental consultation or consent.

*Id.* at ——, 99 S.Ct. at 3050.

The concurring opinion of Justice Stevens, joined by Justices Brennan, Marshall and Blackmun, agreed that the Massachusetts statute was unconstitutional. In Justice Stevens view, the absolute discretion vested in the judge to determine whether

---

**4.** Joined by Chief Justice Burger, Justice Stewart, and Justice Rehnquist.

the best interests of the minor would be served by the abortion meant that the minor's decision would be subject to an absolute third-party veto, clearly precluded by the Court's decision in *Danforth, id.,* at ——, 99 S.Ct. 3035. In rejecting the "best interests" standard, he noted that this standard

> provides little real guidance to the judge, and his decision must necessarily reflect personal and societal values and mores whose enforcement upon the minor—particularly when contrary to her own informed and reasonable decision—is fundamentally at odds with privacy interests underlying the constitutional protection afforded to her decision.

*Id.* Justices Stevens, Brennan, Marshall and Blackmun thus agreed with the plurality that the Massachusetts statute imposed unconstitutional restrictions on an unmarried minor's right to an abortion.

Plaintiff argues that the new Florida statute contains one of the same basic flaws as the Massachusetts statute struck down in *Bellotti,* namely, language in the last sentence of clause (4)(a) stating that "the court shall determine the best interest of the minor and enter its order in accordance with such determination." In Plaintiff's view, this language means that a minor can be deemed mature by the court but nevertheless denied an abortion if the judge concludes that an abortion would not be in her best interest.

Defendants point to the earlier language in (4)(a) in which one of the specific criteria upon which the judge may find good cause for the abortion is "that the minor is sufficiently mature to give an informed consent to the procedure." Defendants argue that the determination of maturity will be dispositive and therefore comport with *Bellotti's* mandate that mature minors must be granted authorization. Defendants then attempt to limit the applicability of the "best interest of the minor" directive in the final sentence, arguing that this language "can

only be read as mandating a frame of reference within which the court must operate should the minor be adjudged to be below the standard of 'sufficient maturity' described by the previous provision." (Defendant's Memorandum, p. 6)

■ This court believes that the Florida legislature made a good faith effort to draft a statute that would impose prerequisites to performing an abortion upon a minor that would fall within the parameters of constitutionally permissible regulation. To be sure, some of the defects in the Massachusetts statute are not present in Florida's law. For example, as defendants correctly point out, the Florida law allows the minor to go directly to court without first notifying or consulting her parents and once in court, the minor may attempt to establish good cause based on her maturity. However, the Florida Legislature enacted this law without the guidance of *Bellotti II* and unfortunately, the statute falls short of the constitutional requirements set forth therein.

First, the Court must agree with the Plaintiff that the statute allows the judge to do precisely what *Bellotti* prohibits, namely, to deny an abortion to a minor who is mature enough to give an informed consent. While the preceding sentences of the section tell the judge that he *may* find good cause if the minor is sufficiently mature, the final sentence is drafted with mandatory language—"The Court *shall* determine the best interest of the minor and enter its order in accordance with such determination." The plain reading of the section indicates that the best interest standard overrides any basis for finding good cause under the criteria set forth in the preceding sentences if the judge determines that an abortion is not in the child's best interests. Therefore the statute unconstitutionally allows the judge to deny abortions to minors who are sufficiently mature to give informed consent.[5]

---

5. At the hearing and in his memorandum, defense counsel conceded that the section conflicts with *Bellotti* if the final sentence of (4)(a)

is construed as overriding the previous language of the paragraph. Counsel argued, however, that even if the section, as written, con-

Second, the Court finds that the Florida statute does not provide procedures for the judicial proceeding that will

> assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained.

*Bellotti II,* —— U.S. at ——, 99 S.Ct. at 3048. The statute does provide that the court "at its discretion may enter its order ex parte" and perhaps this constitutes adequate compliance with the anonymity requirement. However, after examining the statute and considering the possible procedural mechanisms suggested by the Defendants at the hearing in this cause, the Court is not convinced that the statute provides for "sufficient expedition" of the proceeding. It is apparent that speed is critical if the judicial proceeding is not to become an impossible alternative for minors. Dr. Jones testified that every day a teenager continues her pregnancy increases the potential risk involved, that minors are already in a high risk group, and that minors do not usually seek medical assistance until they are at least two months pregnant. " 'Delaying the abortion decision or its effectuation can cause psychological and medical problems, especially as the minor approaches the end of the first trimester' *Baird v. Bellotti,* 393 F.Supp. 847, 853 (D.Mass.1975)." *Wynn v. Carey,* 582 F.2d 1375, 1389 n.29.

The Defendants will be afforded further opportunity to demonstrate the adequacy of the Florida procedure before the entry of a final order. At this stage, however, the Court finds that the procedural deterrents in seeking judicial authorization under the Florida statute contribute to the unconstitutional burden imposed on minor unmarried women. *See Wynn v. Carey,* 582 F.2d 1375 (7th Cir. 1978).

### MARRIED WOMEN—NOTICE PROVISION

Clause (4)(b) of Section 458.505 provides the husband of a married woman with the right to be notified before an abortion can be performed upon his wife, as well as the right to consult with her concerning the procedure. In its entirety, the section provides as follows:

> (b) If the woman is married, the husband shall be given notice of the proposed termination of pregnancy and an opportunity to consult with the wife concerning the procedure. The physician may rely on a written statement of the wife that such notice and opportunity has been given, or he may rely on the written consent of the husband to the proposed termination of pregnancy. If the husband and wife are separated or estranged, the provisions of this paragraph for notice or consent shall not be required. The physician may rely upon a written statement from the wife that the husband is voluntarily living apart or estranged from her.

Plaintiff argues that this notice provision invades the woman's fundamental right to privacy in the abortion decision. Citing *Planned Parenthood v. Danforth, supra,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) in which the Supreme Court held that the state may not constitutionally require the consent of the spouse, Plaintiff claims that no compelling government interest exists to support the burdens imposed on a woman's right by this notice requirement. Plaintiff alleges that the provision violates due process by unduly burdening the privacy rights of married women and that it violates the Equal Protection Clause of the Fourteenth Amendment in that it restricts the access of married women to abortions without furthering a compelling governmental interest. However, this notice and consultation provision falls far short of a veto, much less an absolute veto, and the provision is therefore readily distinguishable from the statute struck down in *Danforth.*

In *Planned Parenthood v. Danforth, supra,* the Supreme Court recognized the legitimacy of a husband's interest in his wife's pregnancy, the state's interest in pro-

---

flicts with *Bellotti,* the last sentence may be severed to preserve the constitutionality of the

Statute. This argument is addressed, *infra,* at p. 1169.

tecting the marital relationship and the potential impact of an abortion decision on that relationship:

We are not unaware of the deep and proper concern and interest that a devoted and protective husband has in his wife's pregnancy and in the growth and development of the fetus she is carrying. Neither has this Court failed to appreciate the importance of the marital relationship in our society. See, e. g., Griswold v. Connecticut, 381 U.S. 479, 486, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965); . . . . Moreover, we recognize that the decision whether to undergo or to forego an abortion may have profound effects on the future of any marriage, effects that are both physical and mental, and possibly deleterious.

428 U.S. at 69, 70, 96 S.Ct. at 2841. Notwithstanding these factors, the Court could not justify allowing the husband to have an absolute, unilateral veto over the wife's abortion decision.

In Poe v. Gerstein, supra, 517 F.2d 787 (1975) the Fifth Circuit Court of Appeals discussed the state's interest in protecting the rights of a pregnant woman's husband, noting that the husband has a strong interest in the procreative potential of his marriage. 517 F.2d at 796. This interest could not justify a statutory scheme providing the husband with an absolute veto but the husband's interests must be afforded weight in evaluating a statute that requires only notice and consultation.

This Court is convinced that the notice provision of the Florida law promotes the state interests of fostering the marital relationship and protecting the rights of husbands without the constitutional infirmity that exists when the husband is given an absolute veto. The wife is required to notify her husband of the proposed abortion and allow him an opportunity to consult with her concerning the procedure. Moreover, she must provide her doctor with a written statement that notice and opportunity have been given or provide him with written consent by the husband. The ultimate decision, however, remains with the wife. Furthermore, the notice requirement does not apply if the couple is estranged or separated.

In Danforth, the Court noted that the statutory provision requiring the husband's consent "does much more than insure that the husband participate in the decision whether his wife should have an abortion," 428 U.S. at 70 n.11, 96 S.Ct. at 2841 n.11. Although this language does not establish conclusively that a statute that only requires consultation with the husband would pass constitutional muster, this Court finds that the Florida provision for notice and consultation does not impose an unconstitutional barrier on the fundamental right of a married woman to seek an abortion.

Plaintiff argues in its supplemental memoranda that the mandatory notification requirements of the statute will, in certain situations, rise to the level of a veto by the husband. At the hearing, Dr. Jones testified that the notice provision "could be detrimental" if the husband was not the father or if it was thought that he would strongly, perhaps even violently, object to an abortion. Penny Scheidt, administrator of a Broward County clinic that performs abortions, testified that she believed the requirement would be a "roadblock" to some married women seeking abortions. From this offer of proof, the Court is not convinced that the statute either directly or by inference creates burdens on a pregnant married woman's rights that are coercive or equivalent to a veto power by the husband. The Court will remain open to a further showing at the final hearing in this cause, but based on the present record, the Court finds that Plaintiff has not shown a substantial likelihood of success of proving that the notice requirement violates due process.

In presenting his Equal Protection challenge, Plaintiff argues that the statute creates two classes of adult women and burdens the married class's fundamental right to secure abortions without furthering a compelling state interest. Having concluded that the notice requirement does not unduly burden this right, the Court must still determine whether the state interest

served by the statute is sufficiently important to sustain a classification imposing any additional restrictions on one of the classes.

■ As discussed above, the Supreme Court has recognized a legitimate state interest in promoting and protecting the marital relationship, an interest which by definition applies *only* to the class of married women. Although this interest in the marital relationship is not sufficiently "compelling" to justify a spousal consent statute, *Planned Parenthood v. Danforth, supra; Poe v. Gerstein,* 517 F.2d 787 (5th Cir. 1975), *aff'd* 428 U.S. 901, 96 S.Ct. 3202, 49 L.Ed.2d 1205 (1976), this interest is sufficient to justify the notice and consultation requirement of the Florida statute. Accordingly, the Court finds that the Plaintiff does not have a substantial likelihood of proving that the notice requirement violates the Equal Protection Clause of the Fourteenth Amendment.

### SEVERABILITY

Having determined that the overriding veto given to the Circuit Court Judge by the final sentence of Subsection (4)(a) is an unconstitutional restriction on the unmarried minor's right to seek an abortion, the Court next turns to the question of whether the invalid portion is severable from the remainder of the statute. The Plaintiff contends that Section 458.505 should be held unconstitutional in its entirety, while the Defendant argues that any unconstitutional language may be severed.

■ The established maxim of statutory construction imposes a judicial obligation to sustain the constitutionality of an act whenever possible by severing invalid clauses and permitting the remainder of the act to stand, *Lane Drug Stores v. Lee,* 11 F.Supp. 672 (N.D.Fla.1935); *State v. Williams,* 343 So.2d 35 (Fla.1977); *Dade County v. Keyes,* 141 So.2d 819 (Fla.App.1962). The fact that the invalid portion is not self-contained in a separate section does not prohibit the court from applying the severability rule, *Small v. Sun Oil Co.,* 222 So.2d 196 (Fla.1969). The Florida Supreme Court has stricken a sentence, *State v. Williams, supra,* and even

a single phrase, *Cramp v. Board of Public Instruction,* 137 So.2d 828 (Fla.1962), while preserving the remainder of the statute.

■ The severability of any particular portion of a statute is a mixed question of law and fact to be determined by the trial court with appropriate review of the conclusion in the appellate court, *City Council, No. Miami Beach v. Trebor Const. Corp.,* 254 So.2d 51 (Fla.App.1971). To determine whether invalid portions of an act are severable, the Court must consider whether the remaining portions constitute a complete and workable statute which gives effect to the apparent legislative intent of its enactment. Severance is inappropriate where the valid and invalid portions are so interdependent that it cannot be said that the legislature would have enacted the remaining portions of the act without the invalid portions, *State v. Calhoun County,* 126 Fla. 376, 127 Fla. 304, 170 So. 883 (1936). It is clear, then, that legislative intent is the controlling factor in determining severability, *State v. Lee,* 356 So.2d 276 (Fla.1978), and that the intent of the legislature is to be gleaned from the statute itself, *Small v. Sun Oil Co., supra,* interpreted as a whole. While it has become almost routine to include severability clauses in Florida statutes, the rule is operative even though an act does not contain such a clause, *State v. Williams, supra.* Therefore, even though Florida Statute 458.505 does not contain a severability clause, the Court must endeavor to perceive the legislative intent of the abortion section and determine whether judicial surgery can preserve this statute.

It is clear from the enactment of the current statute, as well as the previous Florida abortion statute, Florida Statutes 458.22, that the Florida Legislature seeks to regulate access to abortions, particularly where unmarried minors seek abortions. To be sure, the legislature intended to impose only constitutionally permissible restrictions, but the act was passed without the benefit of the Supreme Court's most recent attempt to delineate permissible burdens on the abortion decision in *Bellotti,*

*supra.* Given this broad legislative purpose, the Court must determine whether particular subsections or portions thereof, imposing what the Supreme Court has now determined to be impermissible restrictions, may be severed from the remainder of the statute without violating legislative intent. More specifically, the question is whether the legislature would have enacted the valid portions of the statute with the unconstitutional portion stricken therefrom.

The Court's analysis of Subsection (4)(a) reveals that the entire subsection seeks to regulate the access of unmarried minors to abortions. The final sentence of Subsection (4)(a) allows virtually unlimited discretion to the Circuit Court Judge by directing him to "determine the best interest of the minor" and enter his order accordingly. The mandatory language of this overriding veto appears to indicate that a central purpose of the subsection was to preserve an absolute veto power in the court regardless of the minor's maturity or the existence of other grounds for establishing good cause according to the criteria set forth in the preceding sentences. To sever the final sentence would certainly effect a result other than, and possibly directly opposite to, this manifest legislative intent of the entire subsection. That the final sentence is inextricably interwoven with the remainder of the subsection is demonstrated by the *mandatory* language of the sentence, as contrasted with the *permissive* language of the disjunctive alternatives for finding good cause presented in prior sentences. The Court finds that the final sentence of Subsection (4)(a) is not severable from the remainder of the statute.

Even if the invalid portion of Subsection (4)(a) could be severed, the remainder of that section would not comport with the criteria set out in *Bellotti* for two reasons: 1) the remainder of the subsection would still permit a Circuit Court Judge to deny an abortion to an unmarried minor found to be sufficiently mature to give informed consent; and 2) the language allowing a judge to enter an order "based upon any other good cause shown" does not specifically inform the judge that a minor found

not to be sufficiently mature to give informed consent must still be given the opportunity to show that an abortion would nevertheless be in her best interest, *Bellotti, supra,* —— U.S. at ——, 99 S.Ct. 3035. Therefore, even if the last sentence could be severed without distorting the legislative intent, the remainder of the paragraph would still be of doubtful constitutional validity under *Bellotti.*

Applying the test of severability to Subsection (4)(a) in its entirety, however, obtains a different result. It is clear that the provisions for restricting access to abortions of unmarried minors are not central to nor interdependent with the statutory provisions governing married women and unmarried women over eighteen (18). Further, the legitimate state interest underlying Subsection (4)(a), concern for the special vulnerability of minors, is separate and distinct from the state's interest in protecting the marital relationship as reflected in the provisions of Subsection (4)(b). In view of the discrete state interests involved, there is no reason to believe that the legislature would not have enacted the permissible restrictions on married women seeking abortions merely because of a constitutional flaw in the provisions set out for unmarried minors. Subsection (4)(b) and the remainder of the statute can stand alone as an expression of legislative intent which is complete in itself, sensible, and capable of being executed as to those classes of women to which it applies.

A similar conclusion regarding severability was reached upon different facts when the Supreme Court of Florida reviewed a conviction based upon violation of the previous Florida abortion statute, Florida Statute 458.22. Affirming the conviction, the court in *Wright v. State,* 351 So.2d 708 (Fla.1977), found that the statutory requirement of "physician" was severable from the remainder of the statute, which had previously been declared unconstitutional in its approved facility requirements and spousal or parental consent requirements, *Coe v. Gerstein,* 376 F.Supp. 695 (S.D.Fla.1973). The court in *Wright* interpreted the entire

statute as an expression of legislative intent regarding abortion as a medical procedure necessitating input into the decision which a physician would provide. On this basis, the court found that the single provision regarding the "physician" requirement would have been enacted without the other elements of the statute and thus was sufficiently independent so as to be severable from the invalid portions of the statute, *Coe* at 711. The severed provision was constitutionally enforced against the defendant and the conviction affirmed.

■ The Court finds that severing Subsection (4)(a) would not affect the enforcement or constitutionality of the remainder of the statute and for the purpose of the preliminary injunction entered herein deems Subsection (4)(a) severed in its entirety. Accordingly, the preliminary injunction will enjoin the enforcement of Subsection (4)(a) alone and leave the remainder of the Act in full force and effect.

PRELIMINARY INJUNCTIVE RELIEF

■ This Court must consider four factors in determining whether to enter a preliminary injunction:

(1) Is there a substantial likelihood that Plaintiff will prevail on the merits?

(2) Is there a substantial threat that Plaintiff or members of the classes that he represents will suffer irreparable injury if interlocutory injunctive relief is not granted?

(3) Does the threatened injury to Plaintiffs outweigh the threatened harm the injunction may do to Defendants?

(4) Will the granting of a preliminary injunction disserve the public interest? *See, e. g., Buchanan v. U. S. Postal Service,* 508 F.2d 259 (5th Cir. 1975).

At the hearing and in their Memorandum of Law in opposition to Plaintiff's Motion for Preliminary Injunction, Defendants presented argument addressed solely to factor number (1) above, asserting that a preliminary injunction would not be proper in the instant case because the Plaintiff cannot show a substantial likelihood of success on the merits. The Court finds that Plaintiff has met this burden with respect to Section 458.505(4)(a), regulating abortions for minor unmarried women but has failed to show a substantial likelihood of establishing the unconstitutionality of Section 458.-505(4)(b), the notice provision for married women.

Although not specifically contested by the Defendants, the three additional prerequisites for preliminary injunctive relief have been considered and the Court finds that they are satisfied. Testimony presented by the Plaintiff established that many unmarried minors seeking abortions are being turned away by doctors and clinics because they are unable to comply with the requirements of the new statute and that some of these minors would seek illegal abortions or attempt to self-abort. This Court expedited the hearing in this matter and the entry of its Order herein precisely because delay in this matter could cause irreparable harm to these individuals. This threatened harm, whether it be the risk that these girls will attempt to self-abort or seek illegal abortions, or the increased medical danger of abortion as their pregnancies advance, clearly outweighs any threatened harm to the Defendants. Finally, enjoining the enforcement of a statute that unconstitutionally infringes on the privacy rights of women in this state cannot disserve the public interest.

Thereupon, for the reasons set forth in this opinion, it is

ORDERED AND ADJUDGED that Plaintiff's Motion for a Preliminary Injunction is GRANTED in part and DENIED in part as follows:

1. Defendants are hereby enjoined from prosecuting the Plaintiff or any member of the classes he represents for performing or participating in the termination of pregnancy in violation of Section 458.505(4)(a), Fla. Stats.

2. Plaintiff's Motion is DENIED insofar as it seeks to enjoin the Defendants from enforcing Section 458.505(4)(b), Fla.Stats.

3. Except for Subsection (4)(a), Florida Statutes Section 458.505 shall remain in full force and effect.